THE STATE ex rel. FOGEL CONSTRUCTION COMPANY v. FRANCIS H. TRIMBLE et al., Judges of Kansas City Court of Appeals.

Division One, July 30, 1925.

1. **NEGLIGENCE: Defective Wire: Recoil: Pleading.** In a suit for damages for injuries received by plaintiff when he cut four feet of wire from a bale, to be used in tying the steel rods of a re-en-

State ex rel. Fogel Const. Co. v. Trimble.

forced concrete pillar, and one end of the wire recoiled and struck him in the eye, allegations that "defendant failed to furnish plaintiff with reasonably safe appliances and materials, in that it furnished him wire much harder and stiffer and having a greater recoiling strength than the wire ordinarily used for the purpose," do not charge that there was a defect in the tie wire, or that the wire was not reasonably safe for the purposes for which it was being used, and do not charge defendant with actionable negligence. Hardness, stiffness and greater recoiling strength than annealed wire possesses are not faults, blemishes or imperfections, but merely constant characteristics of unannealed wire.

2. ———: ———: ———: **Danger: Precaution.** Evidence that some precaution was necessary in cutting a piece of unannealed wire from a bale in order to avoid injury from the recoil does not show that the use of unannealed wire was dangerous.

3. ———: **Safe Materials: Unannealed Wire: Assumption of Risk.** A contractor, in constructing concrete pillars re-enforced by steel rods, may use unannealed wire to tie the rods to the encircling band without incurring liability to his employees required to handle it, although it is the general custom to use annealed wire in similar construction; and although, when a piece of the wire is cut from the bale, the wire recoils and strikes the employee in the eye, the contractor incurs no liability merely because he fails to furnish wire which requires somewhat less care in its use. Whether the wire be regarded as an appliance or simply as material entering into the construction of the building, the contractor has a right to conduct his business in his own way, and if he uses unannealed wire the employee who handles it, by entering and continuing in the employment, assumes the risk incident to its use.

4. ———: ———: **Concealed Danger: No Warning: Certiorari to Court of Appeals: Defective Return: Conflict of Opinions.** If the wire customarily used by the contractor for the purpose of tying steel rods in the re-enforced concrete pillars of the building he was constructing, was soft, pliable and had no recoiling strength, and for a long period of time he had furnished his employees such annealed wire, and without notice or warning he furnished them a bale of unannealed wire identical in appearance with the wire customarily used, whereby the employee was lulled into a sense of security and when he cut off a piece the wire recoiled and struck him in the eye, and a negligent failure to warn is properly pleaded, it would seem that the injured employee is entitled to recover damages; but if copies of the pleadings are not returned in re-

State ex rel. Fogel Const. Co. v. Trimble.

sponse to the writ of *certiorari* directed to the Court of Appeals, this court cannot rule that such matters were sufficiently pleaded.

Corpus Juris-Cyc. References: Courts, 15 C. J., Section 511, p. 1079, n. 42. Master and Servant, 39 C. J., Section 449, p. 329, n. 58; Section 450, p. 331, n. 63; Section 908, p. 705, n. 21, p. 708, n. 22.

## *Certiorari.*

OPINION OF COURT OF APPEALS QUASHED.

*Lathrop, Morrow, Fox & Moore, Cyrus Crane, George J. Mersereau,* and *Richard S. Righter* for relator.

(1) The Court of Appeals failed and refused to follow controlling decisions of the Supreme Court when it decided the case below on a legal ground not alleged in the plaintiff's petition or supported by the evidence at the trial. State ex rel. Natl. Newspaper Assn. v. Ellison, 176 S. W. 11; St. Louis v. Wright Con. Co., 210 Mo. 491; Williams v. Lobban, 206 Mo. 399; Overshiner v. Britton, 169 Mo. 341; Huss v. Heydt Bakery Co., 210 Mo. 44; Claflin v. Sylvester, 99 Mo. 276; Black v. Met. St. Ry. Co., 217 Mo. 672; Pointer v. Const. Co., 269 Mo. 104; Ely v. Ry. Co., 77 Mo. 34; Scrivner v. Mo. Pac. Ry. Co., 260 Mo. 421; Deschner v. River Co., 200 Mo. 310; Mirrielees v. Wabash Railroad Co., 163 Mo. 470; Smith v. Kansas City, 128 Mo. 23; Meyer Bros. Drug Co. v. Bybee, 179 Mo. 354; Meyer v. Am. Chair Co., 130 Mo. 188. (2) The Court of Appeals erroneously held, contrary to the rulings of this court, that the duty of a master to his servant to protect him from the danger of injury occasioned by the inherent character of the material with which he works is as great and is the same as the duty of the master to protect his servant against the danger of injury due to defective tools furnished by the master. Emery v. Ry Co., 246 S. W. 335; Modlagl v. Iron Co., 248 Mo. 587; Harbacek v. Fulton Iron Works, 287 Mo. 479.

*Clif Langsdale* for respondent.

(1) The Court of Appeals made no erroneous ruling with reference to the duty of the master to his servant in regard to furnishing him materials with which to work. (2) The Court of Appeals did not decide the case on any ground not alleged in plaintiff's petition or supported by the evidence at the trial, and did not refuse to follow any controlling decisions by the Supreme Court.

RAGLAND, P. J.—Relator seeks to have quashed the opinion of the Kansas City Court of Appeals in the case of J. A. Poynter v. Fogel Construction Company, lately pending before it on appeal from the Circuit Court of Jackson County, on the ground that certain of the rulings therein announced are in conflict with decisions of this court. The opinion is as follows:

"This is a suit in damages for personal injuries. Defendant is a corporation engaged in the business of constructing buildings. Plaintiff is an iron worker and at the time of the injury in question was employed by defendant.

"On January 24, 1922, defendant was engaged in erecting a building for use as a garage on Wyandotte Street between Twelfth and Thirteenth Streets in Kansas City, and plaintiff was employed in the work of constructing columns for concrete reinforcement. The process consists of the preparation of hollow wooden framework, within which is placed the requisite number of steel rods, about eight to twelve in number, being an inch more or less in diameter and sixteen feet long. These rods are fastened at regular intervals on the inside of iron bands by the use of small wire, called tie wire. When completed, the frame is a hollow pillar, cylindrical or square in shape as may be desired, having the metal frames on the inside. Into the frame thus formed, the concrete is poured and when 'set' a re-enforced concrete pillar is made. In tying the rods to the bands, or hoops, a small sized wire is used as the tie, said wire being about

the size of the lead in an ordinary lead pencil, or common bailing wire, and is known and designated by the standards in use as No. 16. The record shows that wire of this size ordinarily is used for the purpose above described, and that the custom is to use annealed wire because it is more pliable and easier to use. It is purchased in rolls, or spools, and is unwrapped as needed and segments from the exposed end are cut to desired lengths.

"Plaintiff was a foreman and on the occasion of the injury was engaged with one helper, Clark by name, in the construction of one of these steel frames. The rods had been placed, and it became necessary to tie them to the iron bands by means of the wire as above described. Plaintiff stepped to the bale, or spool, of wire near him on the floor, and with a pair of pliers cut off a piece about four feet in length. The petition charges that one of the loose ends of said wire recoiled and struck plaintiff in the eye, causing the injury for which damages are sought. Three charges of negligence are alleged in the petition, to-wit, (1) that defendant failed to furnish plaintiff with reasonably safe appliances and materials, in that it furnished him wire much harder and stiffer, and having a greater recoiling strength than the wire ordinarily used for such purpose; (2) that defendant failed to warn plaintiff of the dangerous quality of said wire; (3) that defendant negligently ordered and directed plaintiff to cut said wire without warning him of the qualities of said wire.

"The answer is a general denial with pleas of contributory negligence and assumed risk.

"With the issues thus made the cause went to trial to a jury. At the close of plaintiff's evidence defendant asked an instruction in the nature of a demurrer which the court marked 'given,' whereupon plaintiff took an involuntary nonsuit with leave. Motion to set aside the nonsuit was overruled and plaintiff has appealed.

"The only question for our consideration on this review is whether the testimony introduced by plaintiff was sufficiently substantial to warrant its submission to

the jury. As applied to the first charge of negligence plaintiff's testimony shows that the wire furnished was not annealed and therefore it had a tendency to recoil; that it was of the size customarily used for the purpose to which it was applied, viz., No. 16 wire; that it had been used by other workmen for the same purpose and that one-fourth to one-half of the same roll had been so used without accident or damage to anyone. Plaintiff's evidence was to the effect that even annealed wire sometimes will recoil slightly when cut, but not to the extent it did in this instance; that such occurrences are rare and such accidents as befell plaintiff likewise are rare.

"The testimony further shows that defendant had been warned of the condition of the wire as to its stiffness and rigidity, and that it was not suited for the purposes for which it was being used. One Clark, who was plaintiff's helper and working with him at the time of the injury, testified that he, with another workman, had been using the identical wire in question previous to the occurrence, and that he had told the foreman, Armstead, 'That wire was too stiff to use; it wouldn't hold the ties right, and it was very springy and we should have to double it at times which took more time and it didn't work right, *altogether too stiff to use.*' (Italics ours).

"From the testimony of this witness and of that of plaintiff himself, it must be concluded that the wire in question was not such as commonly was used for the purpose to which it then was being applied; that the general foreman had been told that the wire was too stiff. This was sufficient notice to put defendant on inquiry as to the quality of the wire, and the situation could have been met by an inspection and action on the part of defendant. Plaintiff testified that the wire in question was not such as ordinarily was used for such purpose; that it had a tendency to recoil, or spring back when cut, and that the foreman Armstead knew this condition of the wire, and did not warn plaintiff. The evidence shows the wire was No. 16, black in color and not annealed.

In all appearance it was similar to the annealed wire commonly used for that purpose.

"The rule is that in considering the question as to whether or not a demurrer should have been sustained, the appellate court must treat plaintiff's evidence as true and give him the benefit of all reasonable inferences which may be drawn therefrom. We think plaintiff's testimony sufficiently supports the first allegation of negligence to warrant the submission to the jury of the questions of defendant's negligence.

"The rule is well settled that the master is required to look for defects, while the servant is bound only to discover what is apparent to an ordinarily careful and prudent person. In Hayes v. Ice Co., 221 S. W. l. c. 706, the Supreme Court says:

" 'The defendant was required to look for defects, while the plaintiff was bound only to discover what would have been apparent to one of ordinary prudence. The defendant was held to know the defects, if by the exercise of ordinary care they could have been discovered. . . . The duty of inspection as to the master is affirmative, and must be continuously fulfilled and positively performed.'

"See also Bible v. Railroad, 154 S. W. (Mo. App.) 883.

"It was held in Gibson v. Bridge Co., 112 Mo. App. 598:

" 'It is the duty of the servant to serve and obey. It is not supposed when given a task to perform that he will, on his own motion, consume his master's time in making comprehensive inspection to detect dangers. All that is required of him is that he use his senses in the position assigned him; and as to dangers, not to him apparent, and not inherent to the employment, he has the right to rely upon his master's judgment and humanity for the safety of his position.'

"It is urged by defendant that plaintiff's testimony fails to show that defendant in fact was notified that the wire in question had a tendency to recoil by reason of

its not being annealed, and that therefore its use was dangerous. As stated above, plaintiff's testimony does show that defendant was informed that the wire was stiff and not of proper pliability for the use to which it was applied. We agree with plaintiff that it is not material that defendant should have been advised that the wire would have a tendency to recoil, and was dan-. gerous. The point is that defendant was informed that it was not the kind of wire ordinarily used for that purpose and was too stiff.

"Defendant, in its brief, presents the question of the severity of plaintiff's injury. Of course that is not a question for our consideration in passing on the demurrer. The question also is raised as to whether the end of the wire which struck plaintiff in the eye was off the piece retained in plaintiff's hand, or the one attached to the bail of wire. This also is not a matter for consideration on demurrer, and we think it goes only to the question of whether or not plaintiff was injured as alleged in the petition. Defendant further urges that plaintiff's citations are chiefly cases that have to do with defective tools. We hold the citations are applicable here for the reason that the rule as to the duty of the master in such case is the same. It is not necessary to refer at length to decisions in this State which define defendant's duty under such circumstances as are here presented. It is said in Ruch v. Pryor, 199 S. W. 753:

" 'The duty to furnish reasonably safe appliances is a positive and continuing one, and requires the master to make such examination or inspection thereof as ordinary prudence suggests, depending upon the nature of the materials, the influences to which they are subjected or exposed, and the risks naturally incident to the use of the appliances.'

"In the case at bar, the defendant had been informed of the unsuitable character of the wire in question before the injury to plaintiff occurred. Since we find plaintiff's testimony sufficiently supports his first charge of

negligence to warrant the submission of the case to the jury, it follows the court erred in sustaining defendant's demurrer. Other assignments of error need not be discussed at this time. The judgment is reversed and the cause remanded for a new trial.''

The opinion discloses that the principal ruling made was that the allegations of the petition, to the effect, ''that defendant failed to furnish plaintiff with reasonably safe appliances and materials, in that it furnished him wire much harder and stiffer and having a greater recoiling strength than the wire ordinarily used for such purpose,'' charged defendant with actionable negligence and that the charge was supported by the evidentiary facts recited. The opinion proceeds on the theory that there was a *defect* in the ''tie wire'' which rendered it not reasonably safe for the purpose for which it was being used. A most critical examination of the facts stated will not disclose any basis for such a hypothesis. The wire was harder, stiffer and had greater recoiling strength than annealed wire. These qualities, however, were not faults, blemishes or imperfections, they were merely the constant, unfailing characteristics of unannealed wire. There was no showing that the unannealed wire was furnished through inadvertence or mistake, and in the absence of such showing it must be presumed that the defendant knew what it was doing and that it intended that unannealed wire, rather than the annealed, should be used in the construction of the building it was then erecting. It is true that some of its employees were of the opinion that annealed wire was more suitable for use as tie wire than the unannealed, but defendant no doubt used the unannealed for reasons that were wholly satisfactory to itself.

Nor does the evidence as epitomized in the opinion show that the use of unannealed wire was dangerous. It merely discloses that some precaution must be taken when cutting it in order to avoid injury from the recoil.

It seems indubitable that the defendant could use unannealed wire as material entering into the construc-

tion of the building it was erecting without incurring liability to those of its employees who were required to handle it, and this notwithstanding that it was the general custom to use the annealed wire in similar constructions. Even if the wire be regarded as an appliance, still defendant incurred no liability merely because it failed to fur-nish one which required somewhat less care in its use. With respect to the use of unannealed wire, whether it be regarded as an appliance, or simply as material entering into the construction of the building, the defendant had a right to conduct its business in its own way, and plaintiff by entering or continuing in its employ assumed the risks incident to such use. The applicable principles are so familiar and have been so often announced in decisions of this court that we deem it unnecessary to cite the cases.

The counsel for plaintiff in Poynter v. Construction Company, filed the brief for respondents in this case. From that brief we quote:

"The evidence showed that the plaintiff for a long period of time in compliance with the general custom in building circles in Kansas City and vicinity, had been furnished with No. 16 Black Annealed wire for the purpose of wrapping bands to re-inforcing rods; that that wire was soft and pliable and not springy and that it had no recoiling strength; that on the day of his injury, without any notice or warning of any kind, or character, he was furnished with a bale of wire identical in appearance with the wire customarily used; that being thus lulled into a sense of security, he reached out and cut off a piece of the wire, when it recoiled and struck him in the eye. This wire was not the kind that was customarily used, not the kind he had a right to believe it was, but on the other hand it was not annealed and therefore it was stiff and springy and had great recoiling strength. If it was not negligence to furnish this kind of wire under the circumstances above related, to this employee Poynter, then it wouldn't be negligence to furnish an

employee, without warning, dynamite which might appear to be soap.''

The Court of Appeals in its statement of the case very naturally confined itself to such facts as it deemed pertinent to the ruling by which it disposed of the appeal. Copies of the pleadings were not returned in response to our writ so that we have no information as to their contents, except such as is disclosed by the terse summary found in the opinion. If the excerpt above quoted from respondents' brief fairly epitomizes the facts which plaintiff's evidence tended to show, and if the negligent failure to warn was properly pleaded, it would seem clear that the circuit court was in error in sustaining defendant's demurrer to the evidence. However, that question is for the Kansas City Court of Appeals. We are limited in this proceeding to a review of the ruling actually made by it. It is for it to determine what further rulings, if any, it will make, not inconsistent with the views herein expressed. For the reason set forth in the preceding paragraphs the opinion under review is quashed.

*Graves* and *Atwood, JJ.,* concur.