CLARA BATESELL et al., Appellants, v. AMERICAN ZINC, LEAD & SMELTING COMPANY.

Division One, December 19, 1918.

**NEGLIGENCE: Proximate Cause: Approaching Lighted Fuse.** A miner, who had no knowledge of the proper manner of handling dynamite and on account of inexperience possessed no knowledge of the evidences showing that the fuse was on fire at the time he approached it, is not guilty of such contributory negligence as bars a recovery of damages for injuries afflicted by an explosion of the dynamite; but it was the duty of his master to have informed him of the danger of approaching a fuse he had once attempted to light and of the evidences that the danger continued to exist. [Overruling Batesell v. Am. Zinc, Lead & Smelt. Co., 190 Mo. App. 231.]

*Held*, by RAILEY, C., with whom GRAVES and FARIS, JJ., concur, that the evidence establishes that deceased, being a man of fair education and having been in the army for three years and engaged in railroading and farming, entered upon his work in the mine by placing a "boulder pop" of dynamite in the usual manner; that he placed his lamp to the fuse, and gave warning by exclaiming, "Boulder pop," and with the other miners went to cover behind the mine pillars; that after another miner's shot had exploded, he came out from behind the pillar with a miner who worked within three feet of him, whom he asked for a light, stating his lamp had gone out when he attempted to light the fuse, who warned him to wait, but ignoring the warning he approached the fuse, which had in fact gone out, and the explosion followed, causing his death; and these facts being established, it should be held that his own independent negligent act was the proximate cause of his injury.

Appeal from Jasper Circuit Court.—*Hon. Joseph D. Perkins*, Judge.

REVERSED AND REMANDED.

*L. V. McPherson* and *James A. Potter*, for appellants.

*Thomas Hackney* for respondent.

WOODSON, J.—We have carefully read the majority and minority opinions delivered by the Springfield Court of Appeals in this case reported in 190 Mo. App. pages 231 and 254, respectively.

The majority lays too much stress upon the fact that the use of dynamite is a dangerous business, known to all, which the deceased should have borne in mind, and should have avoided the danger incident to its explosion. In one sense that is true, but in the sense in which the deceased was handling it, it is not true. For instance, I know it is dangerous to be around while dynamite is being exploded, and I also know that it is comparatively harmless when the fuse attached thereto is not ignited and it is otherwise properly

handled, but I have no knowledge as to the proper manner of handling it, much less of the evidence that the fuse is on fire. Therefore, if I should approach a stick of dynamite without knowing that the fuse was on fire and had no knowledge of the evidences showing that fact, it could not be correctly stated as a matter of law that I was guilty of negligence in approaching it, even though the fuse was in fact on fire at the time; but, upon the other hand, if I had been familiar with the evidences that it was on fire at the time I approached it, then unquestionably I would have been guilty of negligence. The same is true of the deceased. The evidence tends to show that he had no knowledge of the proper manner of handling dynamite and on account of inexperience he possessed no knowledge whatever of the evidences showing the fuse was on fire at the time he was injured, which, the evidence tended to show, would have been readily discovered by an experienced person.

Under those facts the law is plain as shown by the authorities cited by both the majority and minority opinions mentioned that it was the duty of the defendant to have instructed the deceased of the dangers complained of and have informed him how to have detected the evidences thereof.

With the foregoing preliminary observations, and after a thorough investigation of the record in this case and the authorities cited by counsel on each side, we are of the opinion that the minority opinion correctly declares the law of the case, and we, therefore, overrule the majority opinion and adopt the minority as the opinion of this court.

For the reasons stated, the judgment is reversed, and the cause remanded to the circuit court to re-try the case in harmony with the views herein expressed.

All concur, except *Graves*, *J.*, who dissents, and concurs in Commissioner *Railey's* opinion.

PER CURIAM.—The above opinion of *Woodson*, *J.*, is adopted by Court in Banc as its opinion. *Bond*,

*C. J., Walker* and *Blair, JJ.,* concur; *Williams, J.,* dissents; *Faris* and *Graves, JJ.,* dissent, and concur in opinion of *Railey, C.*

RAILEY, C., (dissenting).—On November 17, 1914, Clara and Norvell Batesell, minors under the age of fourteen years, brought this suit through their guardian and curator, in the circuit court of Jasper County, Missouri, to recover of defendant the sum of $7000, as damages, alleged to have been sustained by them on account of the death of their father, who was killed in defendant's lead-and-zinc mine in said county, on the evening of August 21, 1912, by the explosion of what is denominated at the trial as a "boulder pop." The case was tried before a jury, and at the conclusion of plaintiff's evidence a peremptory instruction was given in behalf of defendant. Plaintiffs thereupon took an involuntary nonsuit, with leave, etc. The case was duly appealed by them to the Springfield Court of Appeals. The latter, in opinion by FARRINGTON, J., concurred in by ROBERTSON, P. J., affirmed the judgment of the trial court. STURGIS, J., filed a dissenting opinion, and the cause was duly certified to this court upon his request. Both opinions are reported in full in 190 Mo. App. 231 et seq. [176 S. W. 446.]

I. We have carefully read, with a great deal of interest, the able and exhaustive opinions, as well as the records and briefs on file in the case. We think the facts as stated in the majority opinion are sustained by the record, and that the views expressed therein, by the majority of the Court of Appeals, properly declare the law of the case. With some additional observations, we hereby adopt the majority opinion, as published in 190 Mo. App. 231, et seq. as the opinion of this court.

II. Aside from the views expressed by Judge FARRINGTON, we are of the opinion that the judgment below was for the right party and should be affirmed, for the following reasons: First, because the alleged

negligence of defendant was not the proximate cause of the death of Batesell. Second, because the voluntary, negligent, independent and intervening act of Batesell, in unnecessarily and heedlessly risking his own life upon an *uncertainty* as to whether his fuse was lighted, should be recorded as the proximate cause of his death,

He knew he had attempted to light the fuse; that he had applied his lighted lamp thereto in order to light it. He thought he had lit it, at the start, and gave the usual signal of "boulder pop," after Merritt had called his warning. When, therefore, Batesell emerged from behind the pillar, immediately after Merritt's shot was fired, he asked Aubuchon for a light, and stated that he was going to light his pop as it had not been lighted. He must have known that if the fuse had been lighted it would cause him injury, should an explosion follow. He was warned by his companion, Aubuchon, from whom he borrowed the light, to wait, but ignored his own safety, and took chances upon an uncertainty, when by waiting as advised to do, he would have sustained no injury. His own independent, intervening negligent act, under the circumstances aforesaid, should be held as the proximate cause of Batesell's death. [1 Cooley on Torts (3 Ed.), secs. 75-6-7, pp. 101-104; Beach on Contributory Negligence (3 Ed.), sec. 35, pp. 50-1; 1 Shearman & Redfield on Negligence (6 Ed.), sec. 25, pp. 47-8; Webb's Pollock on Torts (Enlarged Am. Ed.), pp. 29-31; 1 White on Personal Injuries, sec. 25; Henry v. Ry. Co., 76 Mo. l. c. 293-5; Sira v. Wabash Ry. Co., 115 Mo. l. c. 138; Haviland v. Ry. Co., 172 Mo. 106; Hutchinson v. Ry. Co., 161 Mo. 246; Murray v. St. Louis Transit Co., 176 Mo. l. c. 189-90; Schmidt v. Railroad, 191 Mo. 215; Hutchinson v. Ry. Co., 195 Mo. 546; Mockowik v. Railroad, 196 Mo. l. c. 569; Craine v. Metropolitan St. Ry. Co., 246 Mo. l. c. 404; Rollison v. Railroad, 252 Mo. l. c. 542; Logan v. Ry. Co., 96 Mo. App. l. c. 464; Ry. Co. v. Calhoun, 213 U. S. l. c. 7; St. L. & I. M. Ry. Co. v. McWhirter, 229 U. S. 265; Cole v. G. S. & L. Society, 124 Fed. 113.]

In 1 Cooley on Torts (3 Ed.), pages 101-2-3-4, the rule of law in respect to this subject, is very clearly and forcefully stated, as follows:

"When the act or omission complained of is not in itself a distinct wrong, and can only become a wrong to any particular individual through injurious consequences resulting therefrom, this consequence must not only be shown, but it must be so connected by averment and evidence with the act or omission as to appear to have resulted therefrom according to the ordinary course of events, and as a proximate result of a sufficient cause.

"If the original act was wrongful, and would naturally, according to the ordinary course of events, prove injurious to some other person or persons, and does actually result in injury through the intervention of other causes which are not wrongful, the injury shall be referred to the wrongful cause, passing by those which were innocent. But if the original wrong only becomes injurious in consequence of the intervention of some distinct wrongful act or omission by another, the injury shall be imputed to the last wrong as the proximate cause, and not to that which was more remote."

In 1 White on Personal Injuries, sec. 25, p. 27, it is said:

"When a new, independent cause, not under the control of the alleged wrongdoer, intervenes between the alleged wrongful act and the injury, if such intervening cause is not a consequence of the original wrongful act and could not have been foreseen by the exercise of ordinary· care and but for such intervening cause, the injury to the plaintiff would not have resulted, then the intervening cause will be taken to be the proximate cause of the injury and no recovery can be had from the party who is not responsible for such independent cause."

In Henry v. Ry. Co., 76 Mo. l. c. 293, plaintiff was directed to get into a certain caboose in which he could be hauled with his stock. It was dark and plaintiff entered the caboose, but was told by some one therein to

get out, as the train was not made up. He left the caboose without injury, and in order to be near his stock concluded to get up on the end of a flat car and wait until his train was ready. While standing with his back to the flat car, the latter was struck with another car and ran over plaintiff. He charged in his petition that he had a right to be in the caboose and was wrongfully ejected therefrom; that before he could extricate himself from the net-work of tracks and cars which surrounded him, he was injured as aforesaid. In an able and exhaustive opinion, Hough, J., held that, as plaintiff sustained no injury while leaving the caboose, his expulsion therefrom was not the proximate cause of the injury which he thereafter sustained. It was held that his own voluntary, negligent and independent act, in unnecessarily exposing himself to danger after leaving the caboose in safety, was the proximate cause of his injury and that defendant was not liable therefor.

In Haviland v. Ry. Co., 172 Mo. 106, the plaintiff, a section hand, strained himself while lifting or pushing rails on to a flat car. He sued upon the theory that defendant was negligent in failing to provide a sufficient number of men to do the work. It was held that he could not recover, as his injury resulted from his own act in employing more effort than was necessary, without the order or act of any one else.

In Sira v. Wabash Ry. Co., 115 Mo. l. c. 131-2, plaintiff was a passenger upon defendant's train and was wrongfully put off at a place other than her destination. She got off at the town of Montgomery, and was decoyed by a male passenger to a saloon in said town, and there ravished by him. The suit was predicated upon the injury plaintiff received at the hands of the passenger, after she left the train at Montgomery. Macfarlane, J., on page 138, speaking for this court, said: "The horrible injuries suffered by plaintiff at the hands of Dusenberry, and the resulting damage, were not the

direct and immediate consequence of requiring her to leave the train at Montgomery.''

In Hutchinson v. Ry. Co., 161 Mo. 246, Murray v. Transit Co., 176 Mo. 1. c. 189-90, and Hutchinson v. Ry. Co., 195 Mo. 546, the servants of the railway companies were negligent in failing to ring the bell or sound the whistle, yet, as the injured parties knew the trains were approaching, there could be no recovery based on this charge of negligence. In other words, we held that the negligence above mentioned was not the proximate cause of the injury.

In Schmidt v. Railroad, 191 Mo. 215, the train was run in violation of the speed ordinance. A recovery was denied on the ground that the negligence of deceased was the proximate cause of the injury. GANTT, J., on page 236, concluded the opinion as follows: ''The negligence of the deceased was concurrent in point of time with the negligent running of the train and was the direct proximate cause of his death.''

The cause was reversed, and judgment entered in this court for defendant.

In Ry. Co. v. McWhirter, 229 U. S. 265, the deceased was a brakeman, and at the date of his death was engaged in interstate commerce. His run was from Missouri into Illinois. At the time of his death, he had been overworked five minutes in violation of the Federal sixteen-hour law. The crew pulled into a station, deceased got out of the cab, went along in front of the engine between the rails to set the switch, and while thus moving, stumbled, fell in front of the engine and was run over and killed. A recovery was sought upon the ground that defendant was violating the sixteen-hour law at the time and place of accident. The Supreme Court of the United States reversed the Kentucky Court of Appeals, and held that there was no casual connection between the violation of the sixteen-hour law, and the death of the brakeman, which was occasioned by his own act in traveling between the rails in front of the moving engine.

The other authorities cited are in line with those above mentioned. They leave no room for doubt as to the law in a case of this character.

The deceased was a man of fair education, was in the army for three years, had been engaged in farming, railroading, etc. On the 21st of August, 1912, he entered upon his work in the evening by preparing a "boulder pop" in the usual way and in a workmanlike manner. He placed his lamp to the fuse, and gave warning to the other employees by exclaiming, as did Merritt, "boulder pop," which meant for the other employees to go to cover or behind the pillars. Now, Batesell knew when he placed his lamp to the fuse that it was expected to explode the powder. When he warned the other employees by exclaiming, "boulder pop," he evidently thought his fuse had been lighted. After this, he and all the employees went to the pillars, until after Merritt's shot exploded. Batesell, then came out from behind the pillar with Aubuchon, who had worked within three feet of him, and asked for a light, as his lamp had gone out when he attempted to light the fuse. Now, at this point, regardless of any alleged negligence of defendant, Batesell was occupying a position of safety. He then concluded he had not lit his fuse and started back to light it. As a matter of law, he must have known that if his fuse was still burning, the charge was liable to explode and do him injury. What then was his duty? Had he the right, at the expense of the master, to speculate as to his own safety, without waiting a reasonable time for the explosion to occur? We think not, and, yet, acting simply upon his then belief that the fuse was not lighted, and in the face of the warning of Aubuchon to wait, he voluntarily became the architect of his own misfortune. He was not only negligent and reckless with regard to his own safety, but lost his life under such circumstances as to preclude a recovery in this action.

(a) Even if it were conceded that defendant's alleged negligence had anything to do with the death

of Batesell, the concurring negligence of the latter was amply sufficient to defeat this action.

In Beach on Contributory Negligence (3 Ed.), section 35, pages 50-1, the learned author, after reviewing the law upon this subject, said: "However it may have been expressed, the principle underlying all these decisions seems to be, and verily it is the only sound basis upon which they can rest, that whenever the plaintiff's case shows any want of ordinary care under the circumstances, even the slightest, contributing in any degree, even the smallest, as a proximate cause of the injury for which he brings his action, his right to recover is thereby destroyed. Anything more than this imposes upon the plaintiff the duty of exercising more than ordinary care, and refuses him a remedy for injuries that others inflict upon him; and anything less than this, covered up never so mistily in belabored and confusing legal phraseology, imposes upon the defendant the duty of exercising more than ordinary care, requires him to take better care of the plaintiff than the law requires the plaintiff to take of himself, and compels him to pay damages for injuries that he did not inflict. There can be no middle ground; either the truth of these elementary propositions must be conceded or the whole theory of our modern law of contributory negligence must be abandoned. Without this, it is a theory of oppression and injustice. There is no room for it in the common law."

III. Upon the record before us, we are of the opinion that the judgment below was for the right party, and it should be accordingly affirmed.

*Faris* and *Graves, JJ.*, dissenting, concur in the above opinion of *Railey, C.*