Everett E. CRANDALL, Appellant,

v.

Arch McGILVRAY, Respondent.

No. 43928.

Supreme Court of Missouri.

Division No. 1.

Sept. 13, 1954.

L. E. Merrill, James J. Wheeler, Keytesville, for appellant.

Peterson & Nelson, Paul M. Peterson, Will L. Nelson, Columbia, for respondent.

DALTON, Presiding Judge.

Action for damages for personal injuries sustained by plaintiff when the fingers of his right hand were caught in the husking rollers of a mechanical corn picker he was operating for his employer, the defendant.

The cause was tried to a jury and submitted on defendant's alleged negligence in failing to warn plaintiff of certain dangers connected with the operation of the corn picker, which dangers were alleged to have been known to defendant but unknown to plaintiff. Contributory negligence was pleaded and submitted as a defense. Verdict and judgment were for the plaintiff for $15,000 but, thereafter, the trial court sustained defendant's after trial motion to set the verdict and judgment aside and to enter judgment for defendant in accordance with defendant's motion for a directed verdict as offered at the close of all the evidence. Judgment was entered for defendant and plaintiff has appealed.

Plaintiff had been employed by defendant as a general farm hand on defendant's farm since 1946. The injury was sustained on November 27, 1951 and this action was instituted about a year later. Plaintiff was 32 years of age and had been engaged in farm and construction work most of his life. He had also worked as a mechanic and had overhauled motors and farm equipment. He could operate "all kinds of farm machinery," including cultivators, discs, plows and mowing machines, all pulled by tractors, and also combines and bulldozers or "any kind of machinery." He had operated a combine with a motor mounted on it and was familiar with that operation. He had operated a tractor with a power take off and knew that it turned all the time, "unless you shut it off"; and that the power could be shut off and the tractor motor left running. In 1939, he had operated a McCormick-Dude mechanical corn picker, pull type, mounted with two rollers and operated by a tractor. He received no in-

structions at that time with reference to its use or any safety precautions.

Plaintiff had first worked for defendant at the McGilvray Elevator, hauling corn, grinding feed and scooping grain. In the fall of 1951, defendant instructed him to operate the corn picker in question, which defendant had purchased a few years before. It was a Wood Brothers picker and was to be operated with defendant's International Farmall tractor. The tractor was equipped with a power take off, with a clutch to disengage the power take off. You could shut off the power and leave the tractor motor still running. Plaintiff had operated machinery of this kind before. Defendant's corn picker was similar in operation to the one plaintiff had operated in 1939, "except the two rollers, mounted type." It had snapping rollers and an elevator to carry the ears of corn up to the husking rollers. The husking rollers were about the same kind as defendant's. The rollers operated at about the same high speed. Plaintiff knew in general how the picker he had used in 1939 operated when the tractor was running. After the ears of corn were snapped off, the machine elevated them into the shucking bed where the shucks were removed, the rollers pulling the shuck down below, the ears remaining on top back in the elevator arrangement. Defendant's Wood Brothers corn picker operated practically the same way. Only after the shuck was taken off the ears of corn, the ears rolled on down into the elevator. Plaintiff "knew how to operate it," but he didn't know how to "hook it up" and get the drive shaft adjusted to the right height. Hooking it up didn't have anything to do with the operation of the rollers. Plaintiff, however, told defendant he knew nothing about a corn picker of the Wood Brothers type. Defendant told plaintiff that all he would have to do would be to try it, as any fool could learn to operate it. Since neither plaintiff nor defendant knew how to hook up the corn picker to a tractor, they went to another farmer for information and then came back and hooked up the corn picker and tractor. Plaintiff "put the shield on it" and they went to the field and began operation. Defendant went with plaintiff for about three hours and while eight or ten loads of corn were gathered, but defendant gave plaintiff no instructions at all about how to operate the corn picker. He did tell him to be careful and to learn to run it. While defendant was with him, plaintiff saw how the picker operated and that the rollers ran at the same high speed as the other picker.

Plaintiff continued to operate the tractor and picker alone the remainder of the first day and, later on second and third days without difficulty, but on the fourth day, after about three hours, the picker stopped, the wheels slid and the tractor kept running. Plaintiff "shut the tractor off" to see what was wrong and found that he had run into a duck blind made of stalks and 12 to 15 feet of 28 inch hog wire fencing, the wire caught in the snapping rollers. He took pliers and cut out the wire and thought he had it fixed. He "shut the power off" to take the hog wire out because he knew "if you got the obstruction out the thing would start up." He figured that if he "left it still connected up and removed the obstruction it would start moving." After removing the wire he started the tractor again, but the corn stalks continued to pile up in the snapping rollers. He then left the tractor motor in operation, the power take off intact, hooked up, with the power take off moving, but the picker was not running. He had started the tractor ahead but the picker "wouldn't pick any corn." He "didn't know anything was caught in it." He said that he left the tractor running and connected up because he had to see what was the matter, that is, to help locate the trouble. If he shut off the motor he could not find out what was the matter. He was going to shut off the motor after he found what the trouble was. He admitted that if he had shut off the motor he could have seen and found the trouble; that by generally checking over the machine you could see where it was broken, but it would have taken longer, probably an hour or an hour and a half.

He inspected the husking rollers, two sets of them, one steel and one rubber. He said

the purpose of the rollers was to take the husks off the corn and that they operated fast, at a "pretty good speed," but when he inspected these rollers, they were stopped and motionless and he "saw a stob sticking up there." At one time he said he didn't think it was the trouble, but later he said he did think the stob was stopping the machine. It was just sticking up in the husking bed. He could see about ten inches of the stob. He didn't see the end that was down, he thought it was just standing there. It was standing up next to the flat metal shield around the husking rollers, right toward the bin, leaning a little. It was standing alone. "I saw the rollers but I didn't see the end of the stick, I mean the end that was down like that, the wire was sticking up above them." "Q. Why did you take it out? A. I don't know. Q. You knew if you did remove anything that was stopping it up the machine would start running? A. Yes, sir." Later, he said that he did not know that these rollers could start up again if the stob was disturbed; and that, when he stepped upon the frame to look down upon the husking rollers, he could not see the rollers on account of the corn on top of them, the corn "could not elevate out" because the rollers had already stopped. He could not see the lower end of the stob which was sticking up out of the corn. He knew the rollers were there, but he could not see just where, because of the corn. He was "just going to throw the stob out of there." His glove stuck to the stob and jerked it down in the husking rollers. "I think instead of throwing it out it caught me, throwed me down in the rollers." He just touched the stob, but knocked it over, his gloves were wet.

He had stepped up on the frame of the corn picker and was looking down, he did not have to reach over the shield which was over the husking rollers. He "just grabbed that stob," his hand was a good ten inches away from the husking rollers, but it jerked his right hand in between the rollers, all but his thumb, as the rollers began revolving. He reached up and threw the belt off and cut the fingers on his left hand. He then held his right hand with his left hand

and "hallowed for help." A neighbor came and shut off the tractor and got a bar and pried the rollers apart and released his hand.

When he took hold of the stob, he said there was no apparent danger, the rollers were motionless and he did not know the rollers could resume turning if the stob was removed. He did not think the stob could go between the rollers. He would not have tried to remove the stob without shutting off the tractor, if he had known the rollers could spread sufficiently to draw such an object between them. If he had known it was dangerous to remove the stob without shutting off the tractor, he would not have attempted it. Plaintiff testified that at the time he was injured he didn't know the husking rollers were equipped with a slip clutch, but he knew about it at the time of the trial having made an inspection of the machine after he was injured. He did know that the power take off on the tractor had a clutch; it was like shifting gears to release the power and leave your motor running and that when he last left the power on the motor was running, but the machine was not running.

On the right side of the machine there was a warning sign: "Be careful." A sign on the side of the machine read: "Keep hands out of husking rolls." He could read and write at the time of his injury, his eyes were good, but he had not seen the sign before he was injured. However, he said it was barely legible at that time, you had to be fairly close to it to read it. No one had pointed it out to him.

Plaintiff also testified that, when he went back to inspect the husking rollers, he figured the machine would start again if he took out what was causing the trouble; that he knew it was dangerous to take anything out; and so far as he knew the power was still connected up to the husking rollers. He further said that no one told him that it was dangerous to put his hand in the husking rollers when they were motionless; and that he did not know that, if he grasped the stob, those rollers would probably start roll-and draw the stob down through the rollers.

When he saw the husking rollers stopped he thought the machine had sheared off a pin and he would would have to put in a pin or something. The machine he operated in 1939 would throw off the drive chain when the husking rollers stopped and it was safe to remove what had stopped the rollers.

Plaintiff said that defendant was an elderly gentleman and that, so far as plaintiff knew, the defendant wasn't familiar with the corn picker in question. Defendant left plaintiff with the corn picker, left its operation up to him. Plaintiff was his own boss in operating the corn picker. Defendant warned him to be careful, but outside of that plaintiff was his own boss and plaintiff "did it the way" he thought best to operate it with his own senses and his own judgment.

Plaintiff offered defendant's deposition from which it appeared that defendant was 76 or 77 years of age; that he conducted farming operations in Chariton County; that for five or six years he had used mechanical corn pickers to harvest his corn; that he had owned a Wood Brothers corn picker for three years and was "pretty much" familiar with it; that he knew it was a dangerous machine, but he didn't know so much about it; that he knew there were rubber and steel rollers that revolved to take off the shucks; that the rollers had sufficient spread to draw an object between them; that the machine had a throw out clutch constructed in such manner that if the husking rollers were obstructed by an object they would remain under tension to turn; that "if the clutch would throw out, if something released it, it goes right back and starts again"; that plaintiff had worked for him about six years at an elevator, on the farm or driving a truck; that he gave plaintiff no warning or instructions on how to use the corn picker; that he did not tell him the husking rollers could draw an object between them or that it was dangerous, but did tell him "to be careful around it"; that he knew plaintiff had seen other men use the corn picker and he supposed plaintiff knew how it was done; that defendant knew plaintiff knew enough to

run it, although plaintiff said he had not run one of the type before; that he didn't tell plaintiff about the throw out clutch, nor tell him not to try to remove an object from the husking rollers without shutting off the machine; that he didn't suppose that would come up; that he didn't have anybody else instruct plaintiff or tell plaintiff; and that, though, he knew the husking rollers had sufficient spread to draw an object two or three inches in diameter down between them, he didn't tell plaintiff about it. Defendant also said that he did not know there was a "shift" clutch on his corn picker, but there was a throw out clutch on the power shaft, "a hand operated clutch that disconnected the power from the machine—turns off the power and stops the machine."

Other evidence tended to show there was a clutch on the power take off from the tractor and also three or four slip clutches on the husking rollers to prevent breakage. When something obstructed the husking rollers the clutches would slip, but the rollers would remain under tension to turn and resume turning when the obstruction was removed. A shield covered these slip clutches so they were not open to view. The purpose of the shield was to protect the chain and gears. A person would have to look behind the shield to see these slip clutches. Defendant offered no evidence.

■ As stated, the cause was submitted on defendant's alleged negligence in failing to warn plaintiff of dangers known to defendant and unknown to plaintiff. Plaintiff's principal instruction submitting a finding "that said corn picker, on account of its construction and operation, was a dangerous piece of machinery for persons to work with, in this, that said corn picker contained husking rollers which revolved rapidly, each tight against the other, and that said rollers had sufficient give to draw the post mentioned in the evidence between them, that if an object were caught in said husking rollers, said husker rollers would stop turning while remaining under tension to turn, and could and probably would resume turning if the object obstructing their turning were disturbed, and draw the obstructing object

through the husking rollers, and if an attempt were made to remove an object from said husking rollers without shutting off said corn picker, said husking rollers could, and were likely to, catch and crush a hand of the person so attempting * * * and * * * that the defendant had knowledge of these facts, or by the exercise of ordinary care would have had knowledge of the same, and that defendant knew that plaintiff, Everett E. Crandall, was without knowledge of these facts, or by the exercise of ordinary care would of so known, and with such knowledge the defendant directed the said Everett E. Crandall to operate said corn picker, and failed to give him any warning or instructions as to the operating of said corn picker * * *." Other charges of negligence set forth in the petition were abandoned and need not be considered. Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91, 93, 95.

Appellant contends that the court erred in entering judgment for defendant notwithstanding the verdict for plaintiff; that plaintiff's evidence fully supported the findings of fact submitted by his principal instruction, as set out above; that plaintiff's injuries were the result of the negligence of the defendant in failing to warn plaintiff of the dangers of which the defendant knew; that defendant knew, or should have known, the plaintiff did not know of, or appreciate the danger; that there was evidence from which a jury could find "that defendant, at the time he instructed plaintiff to operate the corn picker, could foresee a risk of injury to plaintiff, unless the plaintiff was warned of dangers known to defendant, but not known to plaintiff in the operation of the machine"; and that plaintiff was not guilty of contributory negligence. Respondent, on the other hand, contends that the evidence was wholly insufficient to make out a case for the jury; and that the evidence shows that plaintiff was guilty of contributory negligence as a matter of law.

The particular contributory negligence of plaintiff submitted by defendant's instruction was as follows: " * * * if you find and believe from the evidence that the plaintiff attempted to remove the stob or stake mentioned in evidence from the corn picker while the tractor power used to run said picker was in operation, and not disconnected from said picker, and if you further find and believe that the plaintiff knew, or in the exercise of ordinary care should have known, that to attempt to remove said stob or stake from said machine under such conditions was dangerous and likely to cause him injury, and if you further find that the action of the plaintiff in so attempting to remove said stob or stake was negligence, and you further find that such negligence, if any you find, directly contributed to his hand being caught in the husking rollers of said corn picker, and being injured, if it was, then the plaintiff is not entitled to recover * * *."

The trial judge did not indicate the theory upon which he acted in setting the verdict and judgment aside and entering judgment for defendant, nevertheless, we have reached the conclusion that the court did not err in entering judgment for defendant. In determining the issue presented we must of course view the evidence in a light most favorable to plaintiff and give him the benefit of all favorable inferences to be drawn therefrom, however, we think it clearly appears from plaintiff's own testimony that he was guilty of negligence as a matter of law directly contributing to his injuries. The case is governed by the law as determined in the case of Chisenall v. Thompson, 363 Mo. 538, 252 S.W.2d 335, where plaintiff was injured in attempting to remove cornstalks from between the revolving rollers of a corn picker, and from the upper side of the rollers, without first placing the power take off lever in neutral. Appellant seeks to distinguish that case on the ground that that plaintiff was attempting to remove the cornstalks from the upper side of the rollers "while they were revolving rapidly," while in this case the rollers were motionless and this plaintiff did not know the rollers were under tension to turn. The cases cannot be distinguished on that ground, since plaintiff's own testimony shows that he intentionally left the power

on and connected with the corn picker and knew the machine was not operating, but would start operating if the obstructing object was removed. It further appears that plaintiff failed to make a case for the jury on the issue of defendant's duty to warn because plaintiff failed to show by substantial evidence that he did not know of or appreciate the danger of removing objects which obstructed the operation of the corn picker when the power was on and the machine would probably resume operation if the obstruction was removed.

■ It appears from plaintiff's testimony that he was a mature and experienced farm hand with wide experience in operating power machinery. He admitted that he was "pretty well acquainted with various types of farm machinery." He could operate almost any kind of power-operated farm machinery as detailed in his testimony. He had previously operated defendant's corn picker for more than three days before his injury. He knew the location of the husking rollers, their purpose, direction and speed of operation. He was familiar with the general method of operation. He knew of the clutch in the power take off from the tractor. He knew how to disconnect the power from the machine. He voluntarily and on purpose left the power take off intact and moving with the tractor power hooked up, and at a time when he knew the picker was not running and "wouldn't pick any corn." Under these circumstances we think it wholly immaterial to any of the issues here presented that he may not have known of the additional slip clutches on the husking rollers. The machine was not operating, the stalks were piling up in the snapping rollers, but the tractor was running, the power was on and connected up, when he attempted to remove the stob. He said that he kept the power applied so that he could find the trouble, knowing that if he left the power connected up and removed the obstruction, it would start moving. The very purpose of leaving the power on and the power take off moving, rather than to have disengaged the clutch as he had done when the difficulty was first encountered, was so that the machine would start oper-

ating when the obstruction was removed. The danger incident to the removal of an object from above the husking rollers under the facts stated was open and obvious and as easily known to plaintiff as to defendant. The evidence fails to show any reasonable basis for defendant to have anticipated that a person of plaintiff's age and experience would leave the power take off on the tractor motor connected with the corn picker, when he knew the corn picker was not operating, and by such a method endeavor to find the trouble and be injured when the obstruction was removed and the machine resumed operation.

■ Appellant relies upon the rule stated in 56 C.J.S., Master and Servant, § 284, p. 1045, as follows: "It is the duty of the master to warn and instruct his servant as to the defects and dangers of which he knows, or ought, in the exercise of reasonable care and diligence, to know, and of which the servant has no knowledge, actual or constructive." The cases cited by appellant, however, are within the rule stated in 56 C.J.S., Master and Servant, § 306, p. 1064, where the master knows, or ought to know that the servant by reason of his immature years or inexperience, is ignorant of, or unable to appreciate, the dangers. Appellant cites Evans v. General Explosives Co., 293 Mo. 364, 239 S.W. 487; Czernicke v. Ehrlich, 212 Mo. 386, 397, 111 S.W. 14; Montgomery v. Hammond Packing Co., Mo. App., 217 S.W. 867; Zimmerman v. Pryor, Mo.App., 190 S.W. 26, 28; Batesel v. American Zinc, Lead & Smelting Co., 276 Mo. 210, 207 S.W. 742; and Marsanick v. Luechtefeld, Mo.App., 157 S.W.2d 537. These cases are not applicable under the facts of this case.

Plaintiff's testimony discloses that he knew and fully understood that the husking rollers of this particular machine could be stopped by an obstruction and would automatically resume operation if the obstruction was removed. There was no testimony as to the size of the stob, but plaintiff testified:

"Q. Why did you take it out? A. I don't know.

"Q. You knew if you did remove anything that was stopping it up the machine would start running? A. Yes, sir. * * *

"Q. Did you think that stob was what was stopping your shucking corn? A. Yes, sir. * * *

"Q. If there was a stob, something caught in it, it would make a difference? A. Yes, sir.

"Q. It was your intention if you found something in it you would go back and turn the machine off? A. Yes, sir.

"Q. When you went back to the husking rollers and you took it out then it would start rolling again? A. I figured it would.

"Q. You knew it was dangerous to take anything out? A. Yes, sir.

"Q. So far as you knew the power was still connected up to the rollers, is that right? A. Yes, sir."

Regardless of all of the things that plaintiff testified he did not know about this machine, his testimony shows that he was familiar with its operation and knew of the danger incident to the removal of an object obstructing the machine. It is clearly apparent that he knew the whole machine was under tension to operate and might start at any time; and that it was intentionally left under tension to operate in order to more quickly find the trouble. As stated, plaintiff knew the method and plan of operation of the corn picker; that the husking rollers operated at high speed; and that the husks or shucks were removed by being drawn down between the husking rollers.

■ Defendant could not be negligent in failing to warn plaintiff or advise him of facts of which he had full knowledge. The rule is stated in 35 Am.Jur. 580, Master and Servant, Sec. 148, as follows: "The rule requiring the employer to instruct his employee and to warn him of danger is only for the purpose of supplying him with information which he is not presumed to have, and if it is shown that the employee did in fact possess the knowledge, the failure to warn can in no sense be said to have been the proximate cause of the injury; if it was not the proximate cause of the injury, of course, it cannot have been actionable negligence."

■ The burden rested upon the plaintiff to prove his allegation that he had no knowledge that if the rollers were obstructed they would remain under tension to turn and would resume turning if the obstruction was disturbed or removed; and that the husking rollers would draw an object between them and might catch and crush the hand of one attempting to remove an obstructing object. He could not do so by his own directly contradicting and conflicting testimony as to such issues with no attempt being made to explain the contradictions, Adelsberger v. Sheehy, 332 Mo. 954, 59 S.W.2d 644, 647, nor could he do it by testimony showing that he had such knowledge.

■ Under the situation as proven to have existed by plaintiff's testimony the danger of having one's fingers caught in the rollers in trying to remove an object from above the husking rollers while the power was on and the rollers under tension was open and obvious to a person of ordinary intelligence and particularly to one of plaintiff's age and experience. Chisenall v. Thompson, supra; Hirsch v. Freund Bros. Bread Co., 150 Mo.App. 162, 171, 129 S.W. 1060; 56 C.J.S., Master and Servant, §§ 290, 296 and 305. With the full knowledge of a safe way to check the machine for the trouble, the plaintiff voluntarily chose a method he knew was unsafe and dangerous and under his own testimony he was guilty of contributory negligence as a matter of law. Smith v. Forrester-Nace Box Co., 193 Mo. 715, 737, 92 S.W. 394; Chisenall v. Thompson, supra.

The judgment is affirmed.

All concur.