Bernice WIMSATT, Plaintiff-Appellant,

v.

Clarence MITCHELL, Defendant-Respondent.

No. 23951.

Kansas City Court of Appeals.

Missouri.

June 1, 1964.

Anderson, Anderson & Milholland, John C. Milholland, Harrisonville, for appellant.

Elvin S. Douglas, Jr., Robert W. Spangler, Crouch, Crouch, Spangler & Douglas, Harrisonville, for respondent.

SPERRY, Commissioner.

Plaintiff sued defendant for damages growing out of personal injuries received by her as a result of an automobile collision. There was a verdict for plaintiff in the sum of $145.00. From a judgment thereon plaintiff appeals.

There was evidence to the effect that, at the time the casualty occurred, plaintiff was operating her automobile southward on highway 71, south of Harrisonville; that, when she approached a point where the highway was intersected by a county road from the east, she was compelled to stop because another vehicle had stopped in the southbound traffic lane, north of the intersection; that plaintiff's automobile came to a stop some eight feet north of a car ahead of her; that defendant was operating his pickup truck southward, following plaintiff, at a speed of 45 miles per hour; that defendant could have seen plaintiff's stationary car for a distance of at least 150 feet before the collision occurred; that he applied the brakes; that his truck skidded eighty six feet and struck the rear of plaintiff's automobile, and knocked it about two feet.

The cost of medical services to plaintiff was neither pleaded nor shown. No damag-

es were sought based on the cost of repairs to the car, although plaintiff's husband was permitted to testify in detail as to the nature, extent, and cost ($100.00) of repairs made necessary by the collision. Such testimony was offered to prove the force of the collision. Plaintiff prayed for damages in the amount of $15,000.00, solely because of her personal injuries.

Plaintiff stated that, on the date the accident occurred, November 30, 1960, she was driving to her home at Archie, Missouri, from her place of employment in Kansas City; that it was during the afternoon; that she had five passengers but two had been dropped before the collision occurred; that the weather was clear and the pavement dry; that she stopped her car eight feet north of another car, at the Drake intersection; that she looked back and saw that the defendant's oncoming truck would collide with her car; that she set the brakes; that the force of the collision threw her forward, then backward; that her car was knocked forward about two or three feet. She stated that, after the collision, as she proceeded southward, her neck began hurting; that no bones were broken; that when she arrived home she and her husband drove to Harrisonville, to see Dr. Jones; that he gave her some medicine; that her neck was sore and stiff, in her throat and into the shoulder blades; that, for three weeks, she lay on a heat pad at night; that Dr. Jones treated her; that she drove to work the morning after the accident, and worked from 7:45 A.M. until about 3:30 P.M.; that she operates a sewing machine making dresses; that she lifts as many as twenty five to thirty dresses at a time from one bench to another; that she lost no time from her work because of her injuries.

Dr. Jones testified to the effect that he treated plaintiff following the accident; that she had soreness in the muscles of the neck; some stiffness and muscle spasm; that she suffered a cervical muscle sprain; that he prescribed heat and administered muscle relaxants; that the injury was caused by the collision. He stated that such injuries repair themselves with scar tissue, which is permanent.

The Doctor stated that he had treated plaintiff in July, 1959, for soreness in her right shoulder caused by the nature of the work that she performed at the dress factory; that he administered drugs usually given for neuritis or arthritis; that such complaints come and go; that he treated her with pain medicine for similar complaints twice in January, 1960; that he treated her in April, 1960, for soreness in the knee and jaw; that he treated her twice in August, 1960, for urinary infection; that he treated her in October, 1960, for an intestinal condition; that, after treating her November 30, 1960, he saw her December 10, 1960, when she complained of fatigue and of a cold infection, and had physical therapy; that he saw her January 7, 1961, when she complained of pain in the collar bone and in her right side; that he saw her January 11th, when she complained of pain in the back and shoulders; that he saw her January 28th for pain in her left shoulder and back; that he treated her March 11th for sore throat, chilling, and temperature due to influenza; that, in February, she had improved; that he last saw her in March 1961, when she was experiencing no discomfort and was dismissed. He stated that plaintiff never had any limitation of motion due to her injuries, and that he took no x-rays.

Dr. Feierabend examined plaintiff a few days prior to the date of trial. He stated that she had suffered some injury to the neck; that there was no limitation of motion in the neck; that x-rays disclosed less than normal cervical curve indicating muscle spasm; that it could have been caused by the injuries plaintiff received; that it is a whiplash injury which "stirred up this degenerative change I have described (arthritic) * * * the old pre-existing condition"; that the condition is permanent.

Defendant admitted operating his car south on highway 71, at the time and place when and where the accident occurred. He stated that he saw plaintiff's car stopped ahead of him, about 150 feet; that he put on his brakes; that his car skidded into the rear of plaintiff's vehicle; that he was almost stopped when the cars collided.

Mr. Drury, an employee of Fisher Body Company, and a deputy sheriff, passed the scene on his way home from work. He stated that he stopped; that someone asked plaintiff if she was injured and that she stated that she was not hurt; that he saw no evidence of injuries. He described the extent and nature of the damages to plaintiff's car (which were of a minor character). He stated that he observed no damage to the front of defendant's truck. Defendant's counsel then asked why he had made no report thereof. Plaintiff objected that it was "immaterial", "not competent to prove any issue." The objection was overruled and the witness said, "well, it didn't seem to me like there was a terrible lot of damage and I thought they would settle it maybe between themselves there".

Mr. Barrett was in the car with Drury. He stated that someone asked plaintiff if she was injured and that she made no complaint; that he observed no evidence that she was injured. He stated that there was a dent in the bumper and one on the body of her car.

Dr. Barger, testifying for defendant, stated that plaintiff had, some years previously, been his patient; that he examined her December 24, 1962; that she complained of pain and stiffness in the neck; that x-rays were taken; that she had a full range of motion in the neck, with no muscle spasm; that she had some arthritis in the neck; that, *on the basis of her history,* she had suffered a sprained neck; that the arthritic condition he found could cause pain in the neck; that it would come and go; that she had some loss of cervical curvature. He stated that a sprain is a tearing of soft tissues; that repairs thereto are made by scar tissue, which is permanent; that the scar tissue is not as elastic as undamaged tissue but that the area involved here is ⅟₁₆ of an inch, and of but little import.

Plaintiff contends that that portion of witness Drury's testimony which was admitted over her objection was prejudicial to her claim for substantial damages; that such testimony, coming from a public official, tended to belittle the extent of injuries suffered by her. Of course, it was not proper to permit Drury to give his opinion as to the extent of plaintiff's injuries. Hamre v. Conger, 357 Mo. 497, 209 S.W. 2d 242, 247-248. The admission of this testimony was erroneous. However, we may not reverse a judgment except for material error affecting the merits of the case. Here, Drury had testified in detail, without objection, as to the extent of damages to the car; that he saw no evidence that plaintiff had been injured; and that she had stated that she was not hurt. Plaintiff's husband had testified in detail regarding damages to plaintiff's car. Witness Barrett stated, without objection, that he saw no evidence that plaintiff had suffered personal injuries and said that she did not claim to have been injured when asked. Medical witnesses on behalf of plaintiff, as well as on defendant's behalf, had testified extensively and had been subjected to strict cross examination on the subject of the extent of plaintiff's injuries.

We cannot say that the small amount of the verdict shocks the judicial conscience. The jury could well have reached the verdict it did reach under all of the evidence adduced. It could have done so without the benefit of the cumulative evidence given by Drury.

The jury could have found, from the evidence, that plaintiff suffered no more than a sprain of the neck muscles resulting in scar tissue to the extent of ⅟₁₆ of an inch, which, in Dr. Barger's view, was of small import. The verdict would indicate that they did so believe. She reported to work,

at Kansas City, the next morning at 7:45 A.M. She worked steadily thereafter, seven hours a day, without loss of time. Her work involved considerable lifting and frequent turning of her head from side to side, in sewing and in inspecting her work. We cannot say that the Drury testimony was prejudicially erroneous so as to require a reversal of the judgment. It was in the nature of cumulative evidence of the same general character previously admitted without objection. The Court did not abuse its discretion in overruling the motion for a new trial on this ground.

Plaintiff also complains that the Court improperly sustained objection of Counsel's argument concerning the extent and effect of her injuries, and that such action tended to emphasize and aggravate the erroneously admitted Drury testimony.

One of plaintiff's attorneys had stated in argument, without objection, that plaintiff had a cross to bear; that she had a painful neck and that that pain was a result of the accident; that there was an issue as to what that pain is worth over the period of her life expectancy of 34 years. Another of her attorneys stated:

"* * * Her pains come and go. Pain is not a merchantable item. When you go down to the store you can not buy $10.00 worth of pain, they don't sell pain that way and you are entitled to use your common sense and judgment and when we talk about relief from pain * * * you can't buy relief from pain * * * and when you go to a dentist to have a tooth extracted and he puts novocaine in and pulls the tooth and stops the pain you don't hesitate to buy that relief * * of course not * * * but * * *

"Mr. Spangler: I object to that as being out of the scope of the pleadings and improper argument.
"The Court: Sustained."

* * * * * *

"The truck hit Mrs. Wimsatt, but Mrs. Wimsatt did not strike the car ahead

and it is evident that Mrs. Wimsatt did exercise care and Mr. Mitchell did not exercise the care the others were using.

"The fact that this lady is not hopelessly crippled doesn't put her out of court * * * she is entitled to what she has coming and I say to you * * * give her $7,500.00 which only amounts to about $200 per year for her compensation. * * *

"Mr. Spangler" I object to that as improper argument and ask that the jury be instructed to disregard it and counsel be reprimanded. * * *

"The Court: Sustained, your time is up.

"Mr. Milholland: I am entitled to argue permanent damages. * * *

"The Court: Ladies and gentlemen, you have heard all the evidence in this case and you have heard arguments of counsel and you will now retire to the jury deliberation room to consider your verdict and you are now placed in the custody of the sheriff."

■ This argument constituted an attempt to apply a mathematical formula for adjusting plaintiff's damages for pain and suffering. Faught v. Washam (Mo.), 329 S.W.2d 588, 602 et seq. There the Court declared such an argument to be improper and prejudicial, requiring a reversal of judgment. The Court said:

"From time immemorial, the judicial measure of damages for pain and suffering has been fair and reasonable compensation [see Rigley v. Prior, 290 Mo. 10, 24–26, 233 S.W. 828, 832], because there is and can be no established standard, fixed basis, or mathematical rule by which such damages may be calculated.

* * * * * *

"To us, the considerations advanced by the authorities disapproving the

mathematical formula argument are more persuasive. Whatever may be the cold logic or academic theory of the matter, the ungilded reality is that such argument is calculated and designed to implant in the jurors' minds definite figures and amounts not theretofore in the record (and which otherwise could not get into the record) and to influence the jurors to adopt those figures and amounts in evaluating pain and suffering and in admeasuring damages therefor. If an argument of this character is permissible and proper, it would be just as logical, and equally as fair, to permit 'expert witnesses' to evaluate pain and suffering on a per diem or per hour basis—a revolutionary innovation which, so far as we are advised, not even the most ardent zealots of the mathematical formula technique have (as yet) proposed. Henne v. Balick, Del., [1 Storey 369, 51 Del. 369,] 146 A.2d 394, 398; Botta v. Brunner, 26 N.J. 82, 138 A.2d 713, 722–723, 60 A.L.R.2d 1331. The contention of its advocates that the mathematical formula argument is nothing more than that and is not evidence and that the fancied danger of its being mistaken for or accepted as evidence is greatly magnified and exaggerated by the timorous is a contention sound and plausible without but hollow and specious within. * * *"

The medical evidence and plaintiff's testimony showing that she suffered no loss of income; or time from her work, and her failure to suffer any loss of earning power, leaves her claim for damages resting almost entirely on the *pain* she had suffered and would suffer. The argument was calculated to invite the jurors to place themselves in *plaintiff's* position in calculating the amount of damages, and to assess such damages at the sum of approximately two hundred dollars per year throughout her life expectancy, or at less than one dollar per diem. This constituted

an error, and the court properly sustained an objection thereto.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court. All concur.