William McCORMICK and Georgia McCormick, Respondents,

v.

W. E. SMITH, Jr., Appellant.

No. 54718.

Supreme Court of Missouri, Division No. 2.

Nov. 9, 1970.

James E. Reeves, Ward & Reeves, Caruthersville, for respondents.

Dwight Crader, Sikeston, for appellant.

HENRY I. EAGER, Special Commissioner.

Plaintiff William McCormick, a farm worker, brought this action for personal injuries suffered when his hand was caught in the moving belt of a combine. It is not denied that he suffered severe injuries, and indeed there is no claim that his verdict of $19,000 was excessive. Georgia McCormick, his wife, sought recovery for her loss of consortium, support and services; her verdict was for $2,000 and that is not claimed to be excessive. The defendant is W. E. Smith, Jr., the operator of farm land of about 2,500 acres who had employed plaintiff William McCormick as a farm worker for several years. (When we hereafter refer to "plaintiff" we are indicating William McCormick.) Deere and Company, the manufacturer of the combine, was originally a defendant, but the case as to it was dismissed with prejudice upon the payment of $9,000. The injury occurred on October 27, 1967, in Pemiscot County.

The negligence charged against Mr. Smith is, in substance: that he failed to furnish plaintiff a reasonably safe place

to work; that he furnished to plaintiff a defective and dangerous machine without screens or guards; that he failed to furnish plaintiff with sufficient tools; that he failed to provide plaintiff with adequate assistance; that he required plaintiff to work long hours without rest, and in the nighttime without adequate lights; and that he failed to warn plaintiff of the risk and danger present. The defendant denied plaintiff's allegations generally and pleaded both contributory negligence and assumption of risk. The case was submitted to the jury upon the following allegations of negligence: (a) failure to provide reasonably safe conditions for work, or (b) reasonably safe machinery, or (c) reasonably adequate help. The Court instructed for the defendant on both contributory negligence and assumption of risk (an extremely doubtful defense under our recent cases.) We do not, by this opinion, approve in full the instructions as given for plaintiff or defendant, but there are no objections briefed here and we shall not consider them further.

Defendant had bought the combine from a local dealer several years prior to the accident. There is no contention that it was not in a reasonably good operating condition, and the only complaint in this regard is that it was not equipped with a screen or guard to protect the main drive area and pulley on the left side when the operator was doing such work as plaintiff did here. Such a shield was listed in a Parts Catalogue, but there was no discussion whatever of the matter when the combine was purchased. The part was designated as a "Left Hand Drive Shield."

Plaintiff, 52 at trial time, had a sixth grade education, and had done farm and mechanical work substantially all of his adult life. He had worked for defendant for at least four or five years prior to his injury, doing "a little bit of everything," including the operation of tractors and other farm machinery. He was paid $1.15 per hour and was furnished a house. His annual earnings are immaterial here.

Mr. Smith also rented him a tract of land which he was permitted to operate on shares. On the day in question, after he had been combining beans for two or three days, he went to work between 6:00 and 7:00 a. m.; he first serviced the combine, checking it and greasing it, and he started combining as soon as the dew was off. Except for brief periods for lunch and "supper" he operated the combine until 9:30 p. m., which was the approximate time of his injury. At that time it had begun to "drizzle"; Mr. Smith came out shortly before 9:30 and told him to finish that one truck load and quit. Smith then left. Plaintiff had been having some trouble during the evening because the combine was choking up; the beans did not "want to come up in the grain bin," so he stopped and cleaned out the elevator, finishing as defendant came along. This action still did not accomplish the desired result so, after another round or two, plaintiff stopped, "shut my combine off" but left the motor idling; this left the main drive belt revolving. The motor and belt could have been shut off by turning the ignition switch. There were two lights in the front of the combine but those, plaintiff said, did not illuminate the rear or sides; he testified that there were no other lights. At this time plaintiff realized that he would have to adjust the belt which pulled the beans through (by an auger), as it was apparently loose and slipping. He had made this adjustment on various prior occasions; it consisted of loosening a nut on the "idler" which was at the left side of the combine and comparatively low, and then pushing the "idler" up, whereupon he would tighten the nut again. We have several photographs of the combine but, as frequently happens, they are not sufficiently explained in the evidence, and they are of little help. Plaintiff, using a "crescent" wrench and down on his knees, or "squatting," put the wrench on the nut, which was "pretty tight" and pulled hard on it; the wrench slipped off of the nut and his left hand went into the drive belt. The fair inference from his testimony is that

this would not have happened if the wrench had not slipped, and in fact he testified that the slipping "throwed me into the belt." Plaintiff was taken rather promptly to a hospital where several operations were performed over a period of 60 days and he was convalescent at home for several months longer. He lost all four fingers down to the body of the hand; his thumb remained.

Plaintiff testified: that he could see the "bulk" of the idler sufficiently to get the wrench on the nut; that he "couldn't see the belt" but he knew that it was there (at another point he indicated that he might have seen the "bulk" of the moving belt); that he was just thinking about tightening the idler, and not about the belt; that if there had been a guard over the drive belt he couldn't have gotten into it; that he did not intentionally put his hand on the drive belt; that he had driven and serviced this combine for at least two or three weeks, and was familiar with its controls and moving parts; that he had made this adjustment several times, and usually left the motor running but turned it off for big jobs; that there was no danger in this adjustment if one did not slip, but he knew that any part of a combine is dangerous if you fall into it; that he could have shut off the motor; that one man usually operates a combine and, in that country, often does it at night; that the "idler" is a pulley about six inches in diameter; that he was "feeling pretty tired" at the time of the accident. The plaintiff is incapacitated from doing many things which he previously did, both at work and at home. He was re-employed by the defendant when able to go back to work, but was unable to hold a job as foreman because of his inability to do shopwork.

The defendant testified by deposition. We shall detail little of his testimony, in view of the status of the case. He testified: that plaintiff had operated sundry pieces of machinery and had done maintenance work; that the belt on the combine was exposed "between the pulleys"; when he saw plain-tiff that night the latter had just cleaned out the grain elevator to relieve a choking of the belt and auger; that tightening the "idler" also reduces the likelihood of choking; in so doing one is within *two or three feet* of the drive belt; that there was a light over the grain bin (which plaintiff apparently denied) but that he did not know whether it was working, and in any event it points to the rear; that there was no light which illuminated the area around the drive belt; that no one had advised him (defendant) that a screen for the combine was available; that he gave no warnings to plaintiff; that plaintiff was tired at the time. In a written statement defendant had stated that he believed it was his fault that plaintiff "got hurt"; he sought to explain this at the trial, but the question is not material here; defendant does not contest the making of a submissible case of negligence.

Defendant has briefed three points: (1) that the Court erred in discharging nine members of the jury panel for cause because they owned or had owned John Deere combines; (2) that plaintiff was guilty of contributory negligence as a matter of law; and (3) that the Court erred in permitting plaintiff's counsel to argue to the jury a mathematical formula for calculating damages for pain and suffering. Since the second point could be determinative of the whole case we consider that first.

In substance, defendant's position is: that plaintiff was entirely familiar with the operation of the combine, knew how to turn off the motor and drive belt, and knew that contact with its moving parts was highly dangerous; that he just was not thinking about the belt, that he did not ask for assistance or lights, and that he knew that it was safer to shut off the motor for this job. In conclusion, defendant urges that plaintiff voluntarily exposed himself to a known danger which he appreciated, at least in the event of a slip or fall. Counsel cites two cases and seeks to distinguish the case of Hightower

v. Edwards et al., Mo., Banc, 445 S.W.2d 273. The cases he cites are Bartlett v. Taylor, 351 Mo. 1060, 174 S.W.2d 844, and Bridges v. Arkansas-Missouri Power Co., Mo.App., 410 S.W.2d 106. Bartlett, supra, is on wholly different facts; it involved the supposed repair of the mechanism of a garage door by a lessor. The door subsequently fell and injured the plaintiff. On the issue of contributory negligence the Court held that a voluntary exposure to a known danger was an essential element and also an appreciation of, or an opportunity to appreciate, the peril of the condition or instrumentality. The Court refused to hold that the plaintiff was charged as a matter of law with such knowledge and appreciation of the defect, since he was only required to exercise the care of an ordinarily reasonable person. The case is of no value here except for the principle it states, which indeed is no different from that stated in several later cases which are more nearly analogous on their facts. In Bridges, supra, the Springfield Court of Appeals essentially restated the same principle but also found that reasonable minds might differ as to whether the plaintiff there (a minor) fully appreciated the danger and risk of climbing a tree through which three power lines ran near the top. These cases are not persuasive here.

The first case cited by plaintiff's counsel (which defendant seeks to distinguish) is Hightower v. Edwards et al., Mo., Banc, 445 S.W.2d 273. That case is analogous on its facts and we must discuss them briefly. Plaintiff was assisting in the operation of a fertilizer spreader consisting of two bins or hoppers, each 4½ feet long, through both of which an auger (with "fingers") ran; the auger turned with the forward movement of the spreader, and its purpose was to break up caked fertilizer and promote the movement. The spreader was equipped with rubber tired wheels and it was pulled by a tractor. Plaintiff was standing on a 2″ x 12″ board or plank which had been added by the dealer at the base of and behind the hoppers. The original purpose of the plank was to facilitate the loading of the material. There were no handholds or screens on the hoppers. The flow of fertilizer was shut off by a lever placed at the center between the two hoppers. Plaintiff was riding the spreader standing on the plank, to shut off the flow at the ends of the rows, and to supervise the operation. The ground was rough and cloddy. He had moved over to the right end of the board to check something, but the ground became very rough and he moved back toward the center, thinking that it was a better place to stand. In that situation the rough movement threw him forward, he caught the edge of the hopper with one hand, but the other hand missed and went forward into the auger or agitator. The defendant admitted that there was a likelihood that one in plaintiff's situation might become overbalanced and fall, but contended that the danger was just as obvious to plaintiff as to anyone else and that plaintiff was contributorily negligent as a matter of law. This Court in Banc denied that contention and affirmed a judgment against the employer. In so ruling it held: that plaintiff had not voluntarily placed his hand or arm in the auger; that a voluntary exposure to a known danger was an essential element of contributory negligence, and that to constitute such (as a matter of law) it must appear that the danger was so imminent, obvious and glaring that no reasonable person would undertake to do the job. It further held that the facts there did not disclose such a condition. The judgment against the sales company was reversed, but on a wholly different ground. The case is particularly analogous to ours on its facts, since it involves the matter of a slip or fall which, in itself, caused a contact with the moving machinery.

■ To the same general effect on the doctrine of contributory negligence, see: Keeney v. Callow, Mo., 349 S.W.2d 75 (contact with rotating shaft between feed grinder and tractor); Cathey v. De Weese, Mo., 289 S.W.2d 51 (minor attempting to unclog hay baler by kicking on "tie-arm" with rollers operating); Spears v. Schantz,

241 Mo.App. 879, 246 S.W.2d 399 (contact with revolving shaft of power takeoff of tractor); Bollman v. Kark Rendering Plant, Mo., 418 S.W.2d 39 (contact by minor with revolving gears of a hoist which he was trying to operate). In Keeney the Court held that the danger must be so glaring and obvious as to threaten immediate and almost certain injury. The rule stated in Bollman is equally as strong. We really need not discuss other cases, for we consider that the decision in Hightower is controlling here. The facts in our case, already recited fully, bring it undoubtedly within the bounds of that decision. The cornpicker cases, Jacobson v. Vestal, Mo., 361 S.W.2d 677, Chisenall v. Thompson, 363 Mo. 538, 252 S.W.2d 335, and Crandall v. McGilvray, Mo., 270 S.W.2d 793, would not in any event be controlling in view of our later decision in Hightower, supra, but they may also be distinguished. In those cases it was held that the respective plaintiffs had acted with full realization of the danger in attempting to pick corn or stalks *out of* the moving rollers of the picker, and that such danger was obvious to any reasonable person. Defendant's contention of contributory negligence as a matter of law is denied.

Two points are left. We first consider the voir dire. The point is that the Court erred in excusing, upon a challenge for cause, nine members of the jury panel because each of them owned or had owned a John Deere combine. Counsel for plaintiff asserted that these men would, of necessity, have formed some opinion as to the safety or danger of operating such a piece of equipment, especially in the condition of the one in question here, and that a juryman's own experience should not be permitted to influence his verdict. Defendant's counsel merely took the position that there was nothing to show that these men would be prejudiced and that, similarly, "in an automobile case we would have to remove all owners of automobiles." The Court noted that the majority of the members of the panel were farmers and that 19 out of 20 were employers. The

nine veniremen were replaced by others, and the defendant made no objection to the jury as finally selected. We note here that one ground of negligence relied on and submitted was the furnishing to plaintiff of an "unsafe" piece of equipment (because of the absence of a screen or guard) and that the evidence showed that defendant had bought the combine in that condition.

■ We have no doubt whatever that this ruling was one coming within the broad discretion resting in a trial judge in such matters. Indeed, it would seem entirely possible that the personal experiences of some or all of these men would have played some part in their decision. Each one might at least have wondered whether *he* had been negligent in sending out his own men under similar conditions. Section 494.190, RSMo 1959, V.A.M.S., sets out certain grounds for a challenge for cause, but these grounds are not exclusive. Barb v. Farmers Ins. Exchange, Mo., 281 S.W.2d 297. That case is cited by defendant here; it does not aid him. There the Court upheld the trial court in sustaining a challenge for cause of certain veniremen who were policyholders of defendant, a mutual company; it said that these men might or might not have been actually disqualified for prejudice, but that the Court acted within its discretion. The cases of Smith v. Nickels, Mo.App., 390 S.W.2d 578, and State v. DeClue, Mo., 400 S.W.2d 50 (also cited) are not in point on this issue. All the authorities (including those two) rule that the determination of such a question rests in the sound discretion of the trial court and that its decision should not be disturbed unless there is a clear abuse of that discretion. We have reviewed the facts here (DeClue, supra) and have determined that there was no abuse of discretion. In fact, we are inclined to agree independently with the ruling. The point is denied. We do not reach the point raised by plaintiff that the ruling was in any event harmless error. We hold that it was not error.

■ The final point is that the Court erred in permitting plaintiff's counsel to argue to the jury a "mathematical formula for calculating damages for pain and suffering." It is true that our courts have held, Faught v. Washam, Mo., 329 S.W.2d 588, and Wimsatt v. Mitchell, Mo. App., 383 S.W.2d 154, that the use in argument of a mathematical formula (necessarily unsupported by evidence) as a basis for computing damages for pain and suffering is improper. We adhere to that ruling now. In Faught, the argument (offering the jurymen a $3.00 per day "job" of suffering the plaintiff's disability) was said to implant in the jurors' minds figures or amounts not in the record, and it was further said that pain and suffering is not capable of precise monetary evaluation. In that case there were sundry other errors noted, but that fact does not detract from the effect of the specific ruling. In the following cases the principle has also been recognized: Goldstein v. Fendelman, Mo., 336 S.W.2d 661; Wimsatt v. Mitchell, Mo. App., 383 S.W.2d 154; Corley v. Andrews, Mo.App., 349 S.W.2d 395; Chambers v. City of Kansas City, Mo., 446 S.W.2d 833. Certain of these cases will be referred to later.

■ In the present case plaintiff's counsel did not use, as such, the per day evaluation of pain and suffering; he did, however, place a lump value of $3,000 upon the pain during 60 days in the hospital and $1,000 upon the 64 days of pain at home. All this was coupled with graphic descriptions. Counsel apparently placed these figures on a blackboard along with other claimed items of damages. The objections to this argument were not as precise as they should have been. In Chambers v. City of Kansas City, supra, we said that an argument computing the value in damages for pain, treatments, and hospitalization at specific sums (and generally on a per day basis) was improper under Faught, supra, but the case was not reversed therefor solely because defendant had made no sufficient claim of excessiveness of the verdict. The Court said that the reason for the ruling was that such an error "would only go to the amount of damages" (citing cases) and would not be deemed prejudicial unless a point was made on excessiveness. In Corley, supra, the judgment was affirmed despite an improper argument, because (1) there was no sufficient objection, and (2) there was no claim of excessiveness. In our case the absence of a claim of excessiveness was clearly not inadvertent. The amounts of the verdicts are well within the scope of the evidence.

The present argument was at least on the borderline of error; we need not and do not rule that question specifically. There is no claim whatever here that the verdicts were excessive and for that reason the point of error concerning the argument is denied.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.