JOSEPH B. GIBSON, Respondent, v. MIDLAND
BRIDGE CO., Appellant.

**Kansas City Court of Appeals, May 8, 1905.**

1. **MASTER AND SERVANT: Place of Work: Evidence: Proximate Cause.** On the evidence it is held that the proximate cause of plaintiff's injury was a seam in the bank of earth where he was working and of which seam he was uninformed.

2. ———: ———: **Assumption of Risk: Apparent Dangers.** The servant does not assume the risk of dangers known to the master and not to the servant. He must use his senses in the position assigned to him, but as to dangers not apparent and not inherent in his employment he has a right to rely on the master's judgment and humanity for the safety of his position.

3. ———: ———: ———: **Instructions.** Certain instructions are condemned as enlarging the liability of the master so as to make him liable for dangers arising out of the nature of the material worked on and for dangers springing from changing conditions brought about by work carefully performed.

4. ———: **Negligence: Pleading: Instructions.** The petition and evidence disclosed negligence alone in ordering plaintiff to work in a place more than ordinarily dangerous by the presence of seams in the earth, without warning the servant of such facts. The right to recover should have been restricted to the negligence pleaded.

Appeal from Jackson Circuit Court,—*Hon. James Gibson,* Judge.

REVERSED AND REMANDED.

*A. L. Berger* and *Harkless, Crysler & Histed* for appellants.

(1) The lower court erred in submitting this cause to the jury and should have given the peremptory instruction to return a verdict for defendant. Bradley v. Railroad, 138 Mo. 293; Walker v. Scott, 67 Kans. 814. (2) The court erred in giving instructions numbered

one and two to the jury on behalf of the plaintiff, for the reason that the instructions told the jury that it was the duty of the defendant to furnish plaintiff a reasonably safe place to work, which is not the law as applied to this character of case. Bradley v. Railroad, 138 Mo. 293; Sinberg v. Falk Co., 98 Mo. App. 546. (3) The court erred in giving instruction numbered three for the plaintiff. (4) The court erred in giving instruction numbered four for the plaintiff. (5) It was error to submit issues of negligence not in the petition. Fairgrieve v. Moberly, 29 Mo. App. 141. (6) It is error in the court to assume in an instruction that any given disputed facts constitute negligence. Linn v. Massalon, 78 Mo. App. 111; Carter v. Primm, 60 Mo. App. 423.

*O. H. Avery* and *Elijah Robinson* for respondent.

(1) The trial court committed no error in giving plaintiff's instruction numbered 1. Henry v. Railway, 109 Mo. 488; Williams v. Railway, 119 Mo. 316; Herdler v. Range Co., 136 Mo. 3; Bradley v. Railway, 138 Mo. 293; Doyle v. Trust Co., 140 Mo. 1. (2) The court committed no error in giving plaintiff's instruction numbered 2. (3) The court committed no error in giving plaintiff's instruction numbered 3. (4) The court committed no error in giving plaintiff's instruction numbered 4. (5) As to the demurrer to the evidence, see Keegan v. Kavanaugh, 62 Mo. 232; Shortel v. St. Joseph, 104 Mo. 120; Bradley v. Railway, 138 Mo. 306.

JOHNSON, J.—Action for damages for personal injuries alleged to have been sustained by plaintiff in consequence of defendant's negligence. Plaintiff recovered judgment in the sum of $3,590 and defendants appealed.

Defendants contend that under the facts disclosed by the evidence the case should not have been submitted to the jury. Evidence was introduced by plaintiff show-

ing the following state of facts: Plaintiff at the time of the injury, February 8, 1903, was a common laborer in the service of defendants who were contractors engaged in constructing the approaches and abutments for a highway bridge crossing the Missouri river at St. Charles. Earth for filling was being obtained from the top of an embankment situated in the city on the west side of Second street near Adams. The elevation of the bank extended some sixty feet above the street level. From the height of about fifty feet to the top the bank had been removed for a distance of eight or ten feet, leaving a level shelf or bench from which to the top, a distance of ten feet, the bank rose perpendicularly. The method employed was as follows: Workmen, provided with shovels, picks and crowbars worked on the top detaching earth and throwing it down upon the bench. Workmen stationed there in turn shoveled it into the street below, from which place it was carried away by others for use. Plaintiff had not worked on this bank prior to the day of his injury. On the morning of that day he, with two others, were stationed by the foreman to work upon the bench. After shoveling there for several hours, he was suddenly overwhelmed by a large quantity of earth which became detached from the bank near its top and fell upon him. The resultant injuries were so severe that no claim is made of an excessive verdict. There is some dispute even among plaintiff's witnesses relative to the operations of workmen at the top immediately preceding the accident. Some say the men were at work there while others contend they had all been withdrawn about thirty minutes before. In the work done that morning no earth had been detached with crowbars, but it was loosened and thrown from the top to the bench with pick and shovel. The negligence complained of is involved in the act of sending plaintiff to work in a place made extra hazardous by peculiar conditions, of the existence of which defendants knew and of which they fail-

ed to inform plaintiff, who had no knowledge of them, and who was not in a situation to become aware of their presence. It appears that the ground had frozen during the preceding night and in the morning several seams or cracks running parallel with the line of the bank were plainly observable. At the top a large slab of earth was separated from the main land by one of these seams which extended to a depth of three or four feet. One of the workmen was ordered by the foremen to throw this slab over with his crowbar, but refused to do it because of his fear of falling over. This workman afterwards saw the accident and testified that it was this particular slab that fell upon plaintiff. Further, it was shown that plaintiff from his position could not see this seam upon the top, did not know it was there and nothing appeared upon the face of the bank indicating any defect therein. Defendants did not apprise plaintiff of these conditions at the top.

We cannot concur in the view of defendants that the seam is not made to appear as the proximate, cause of the accident. Under the facts disclosed, which we accept as the facts of the case for the purpose of this discussion, the conclusion is irresistible that the severance by the seam of the attachment of the slab to the main body, leaving it without support except at its base, is what caused it to fall.

Nor can we sanction the claim that the fall of the earth was one of the dangers naturally incidental to the work, and therefore a risk impliedly assumed by plaintiff. The dereliction of defendants consists in their failure to warn plaintiff when they set him to work there of the peculiar conditions which increased the natural danger. A servant does not by implication of law agree to assume the risk of injury from dangers known to the master, but unknown to the servant and undiscoverable by him in the situation in which he is placed, unless the master informs him of such perils. The servant must be given an opportunity to observe the extent of the par-

ticular dangers he is called upon to face, or be informed of them, if the master would be released by implied contract from liability on their account. It is the duty of the servant to serve and obey. It is not supposed when given a task to perform that he will on his own motion consume his master's time in making comprehensive inspections to detect dangers. All that is required of him is that he use his senses in the position assigned him; and-as to dangers not to him apparent, and not inherent to the employment, he has the right to rely upon his master's judgment and humanity for the safety of his position. It was proper to submit the case to the jury.

Instructions numbered one and two given on behalf of plaintiff are as follows: "The jury are instructed that it was the duty of defendants to use every reasonable precaution to avoid exposing the plaintiff to danger, and to use ordinary care and diligence to provide him a reasonably safe place to work; and if the jury believe from the evidence that the embankment on which plaintiff was working, as disclosed by the evidence, was insecure and dangerous, and was liable to fall upon plaintiff while working on the same, at the place where plaintiff is shown to have been working at the time of the accident, and the defendants or their foreman (if they had a foreman in charge of their work there being done) was aware of the dangerous and unsafe condition of such embankment; and if the jury believe that any overseer, superintendant, boss or foreman of the defendants, having power and authority to manage and control plaintiff, ordered or directed the plaintiff to go to work on said embankment and to do the work he was engaged in doing when injured, if you believe from the evidence he was injured, and that while he was so engaged said embankment fell upon him and injured him, then he is entitled to recover in this case; unless the jury further believe from the evidence in the case that the plaintiff was aware of the condition of the embankment where he was working, and the danger from working there was so apparent

that a person of ordinay care and prudence would not have worked there; and by ordinary care and prudence is meant such care and prudence as an ordinarily careful or cautious person would exercise under the same or similar circumstances."

2. "The court instructs the jury that it was the duty of the defendants to exercise reasonable care to furnish plaintiff a reasonably safe place at which to work while in their employ; and if you believe from the evidence in the case that they failed to exercise such care and put plaintiff to work at a place which was not reasonably safe; and if plaintiff was injured in consequence of being thus put to work by the defendants, or their foreman, at a place that was not reasonably safe, and if you believe from the evidence in the case that plaintiff was unaware of the fact that said place was not reasonably safe, then you must return a verdict for plaintiff."

Defendants introduced substantial evidence contradictory to that of plaintiff and tending to show the following facts: The soil in that locality was of a nature readily to crack and to scale from embankments, and that plaintiff was familiar with such characteristics. The workmen on the top were working there at the time of the accident and had been using pick and crowbar in scaling earth from the bank, thereby changing conditions. No seams existed in the ground at the top, nor was there any visible indication there of special defects. The rule requiring the master to exercise reasonable care to furnish the servant a reasonably safe place in which to work, though an elemental principle applicable to the relation of master and servant, is subject to exceptions and qualifications, and should not be given the jury as an unqualified rule in a case where inherent danger lurks in the place which itself, the subject of operation, is undergoing change from the work performed upon it. We quote, as applicable, this statement from the opinion in Bradley v. Railway, 138 Mo. 307, discussing the same subject: "This court has often condemned the instruc-

tion of juries by abstract propositions of law. The principles of negligence have so many exceptions and qualifications that courts themselves are often at a loss in their efforts to apply the facts of a case to a principle of law. In case an exception or qualification to a general principle should, under the evidence, be applied, as in this case, the jury should be instructed as to what facts if found will create a liability."

The instruction under consideration enlarged the master's liability beyond its legitimate scope, excluded entirely the application of the doctrine of assumed risk, and eliminated from the consideration of the jury facts relied upon by defendants which, if believed, constituted a good defense. The duty was imposed upon the master by the direction given to provide a reasonably safe place, regardless of natural dangers. The jury could have believed the earth fell because of its natural tendency to scale, and notwithstanding they also may have believed plaintiff as well as defendants knew of this peculiarity, were required to find for plaintiff. A risk of that character was one incidental to the employment, falling within the class denominated as assumed risks. Further, it could have been found that no seams existed but that the fall of earth was occasioned through dangers springing from changing conditions brought about by work carefully performed; and yet the master knowing of these resultant elements of danger held liable. This is not the law. All of the inherent dangers naturally existing in the place during the progress of the work were assumed by the plaintiff as a part of his contract of employment. The duty of defendants was not to increase the natural hazards by any negligent act of theirs and to inform plaintiff of special defects within their knowledge, actual or constructive, which increased the risk.

Plaintiff's instructions should have told the jury what facts if found would impose liability on defendants, and should not have extended the scope of liability

beyond that arising from injuries sustained from a fall of earth caused by the cracked condition of the ground at the top of the embankment. The only act of negligence pleaded in the petition, and the only one inferable from plaintiff's evidence, was the ordering of plaintiff to work in a place made more than ordinarily dangerous by the presence of seams in the earth without warning him of the facts, within defendants' knowledge, which increased the danger. The right to recover should have been restricted to the specific act of negligence pleaded.

What we have said also applies to plaintiff's fourth instruction which contains the infirmity noted in those considered.

The judgment is reversed and the cause remanded. All concur.

