Harold RICKETTS, Plaintiff-Respondent,

v.

KANSAS CITY STOCK YARDS OF MAINE, a corporation, Defendant-Appellant.

No. KCD 26956.

Missouri Court of Appeals, Kansas City District.

May 3, 1976.

Motion for Rehearing and/or Transfer Denied June 1, 1976.

Application to Transfer Denied July 12, 1976.

**614**

Joe W. Coleman, Leonard A. O'Neal, Kansas City, for defendant-appellant.

M. L. Kodas, James C. Logan, Kansas City, for plaintiff-respondent.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

DIXON, Presiding Judge.

This is the second appeal of plaintiff's common law action against the defendant for injuries received by plaintiff while engaged in employment as a laborer by defendant. Plaintiff's injuries were received when a portion of a concrete gutter being removed by plaintiff and fellow workers fell upon him. Plaintiff received a jury award of $150,000 on the second trial, and defendant appeals. The first trial resulted in a jury verdict for $125,000 which was reversed on appeal by the Supreme Court for error in the damage instruction. The opinion on the first appeal is reported in 484 S.W.2d 216 (Mo. banc 1972).

Defendant company has briefed six points of claimed error, each with several subpoints. These points are unreasonably prolix and argumentative, so much so as to verge on violation of Rule 84.04(d). To keep this opinion within reasonable limits of length and intelligibility, they will be paraphrased at the beginning of each section of the opinion.

Generally stated, they are claims of error in the admission and exclusion of evidence, erroneous argument by plaintiff, erroneous exclusion of defense arguments, failure to order remittitur and error in the principal instruction.

As noted, the plaintiff was injured when a large piece of concrete gutter fell upon him as he was climbing to the scaffold

erected by defendant to permit the plaintiff and his fellow workmen to remove the gutter. A detailed statement of the facts appears in the prior Supreme Court opinion, and there is so little variance in the evidence presented in the two trials that reference may be made to the earlier opinion for a detailed statement of the facts. In the discussion of the points raised, the evidentiary references will be to the evidence presented in the second trial.

## I.

Defendant's first claim of error related to opening statement and evidence of the plaintiff referring to the defendant company's rejection of the Missouri Compensation Act and the failure of defendant to elect coverage under the Kansas Compensation Act.

Some procedural background is necessary for the resolution of this point. On the Friday prior to the start of the trial, there was an extended off-the-record conference between the court and counsel. As appears from the record made on the Monday the trial commenced, there had been a sharp dispute as to the availability to the defendant of the defenses of contributory negligence and assumption of the risk, both of which defenses having been pled in the answer remained in the case. The colloquy between court and counsel also indicates that the issue of the proof of rejection of the Missouri Compensation Act and the election under the Kansas Act also was discussed at the Friday conference. The relation between the Acts and the defenses is that the defenses are denied if defendant rejected the Missouri Act and elected not to come under the Kansas Act. The court in the colloquy indicated that a stipulation had been filed in the prior trial that removed the issues of coverage under the Acts, but that the defendant had indicated such a stipulation would not be made in the pending trial. The trial court thus stated he expected evidence to be offered by the plaintiff on the issue of the rejection of Workmen's Compensation Acts and cautioned the plaintiff not to make any effort

to show or imply that this was anything but a proper exercise of defendant's rights.

After that statement by the court reflecting the court's understanding of the position of the parties, the defendant then attempted to amend the pleadings to remove the issues of contributory negligence and assumption of risk. The request of defendant at that time was to obtain a ruling on the motion for leave to amend. Simultaneously, the defendant had offered to admit the allegations of paragraph 2 of plaintiff's petition, again by amendment of the pleadings, thus admitting its rejection of the Missouri Act. No corresponding offer was made to delete the pleading that defendant was subject to the Kansas Act, and no admission thereto was offered.

After this colloquy, the court denied the motion to amend. The plaintiff offered, and the court received over defendant's objection, the testimony of the Directors of Workmen's Compensation of the States of Kansas and Missouri to the effect that the defendant had rejected the Missouri Compensation Act in 1927 and failed to elect to be covered by the Kansas Compensation Act since its adoption. This evidence followed an assertion by plaintiff in opening statement that such evidence would be forthcoming, likewise objected to by defendant.

■ Defendant's argument on this point is suffused with the trial judge's reasons for the admission of the evidence. Those reasons advanced by the trial court as support for the ruling need not be of concern here. The ruling if it be right, even if erroneously arrived at, will not be disturbed. *Edgar v. Fitzpatrick*, 377 S.W.2d 314 (Mo. banc 1964); *Dill v. Poindexter Tile Company*, 451 S.W.2d 365 (Mo.App.1970), and *Commercial Union Ins. Co. v. Farmers Mut. Fire Ins. Co.*, 457 S.W.2d 224 (Mo.App. 1970).

Likewise, the issues raised and argued as to the propriety of the plaintiff's pleading the rejection of the Workmen's Compensation Act need not be considered or decided. Whatever the merits of the plaintiff tendering the issue by the anticipatory pleading of

the defendant's rejection, the fact remains the defendant elected to plead over and tender the issue. The fundamental issue is the admissibility over the objections made.

The precise objection was that the evidence was "irrelevant to any issue," that "it was strictly a matter for the court" and "relates to no issue to be submitted to the jury." Defendant also asserted that such evidence was "prejudicial" and its only purpose was to "biasing and prejudicing the jury."

■ The action of the trial court in overruling the motion to amend the pleadings is not attacked by defendant, nor could it be successfully attacked. The action of the trial court in ruling such a proffered amendment on the day of trial is discretionary. *Boling v. State Farm Mutual Automobile Ins. Co.*, 466 S.W.2d 696 (Mo.1971); *Kessler v. Reed*, 481 S.W.2d 559 (Mo.App. 1972). In the circumstances of this case, no abuse of discretion appears. The defendant on the Friday conference had remained adamant in refusing to amend or stipulate. The defendant's tardy recognition of the facts and the effect of the denial of the rejection of the Missouri Compensation Act cannot be said to convict the trial court of an abuse of discretion.

■ Shorn of issues not properly raised and of the issues not necessary for decision, the question becomes a simple one of relevancy. The trial court must rule on the admission of evidence in the posture of the case at the time the evidence is offered. *State ex rel. State Highway Commission v. Heim*, 483 S.W.2d 410, 414 (Mo.App.1972). When the evidence was offered, the rejection of the Missouri Act and the election under the Kansas Act were live issues in the case. The evidence offered was clearly relevant on those issues.

What this boils down to is an attempt by the defendant to equivocate on the issue in the pre-trial stages and force the plaintiff to his proof in the hope that this would somehow infuse error in the case. The defendant's belated request that the trial court hear this evidence and rule upon it as a matter of law has the same hollow ring.

If defendant wished to keep this evidence from the jury, it could have simply stipulated as in the first trial and in any event have timely filed an admission.

It follows that defendant's claimed error of mention of such evidence in the plaintiff's opening statement also must fail. If the evidence was admissible, it was appropriate for plaintiff to set forth in the opening statement what the proof would show. The objection made was only that defendant intended to object to the evidence itself and in any event defendant, in the two pages devoted to its point of error, never mentions the trial court's action on opening statement as part of the error complaint of.

■ Defendant also complains that the plaintiff raised the matter of the rejection by defendant in final argument. No objection was made at the time, and the matter is thus not preserved. Defendant in its brief gives a transcript reference to the objection made to plaintiff's opening statement. The objection was not a continuing one. The trial judge's remark ·that the objection would apply to any other remarks on the subject was clearly intended to preserve the objection to any other such remarks in the opening statement. In no realistic sense was the trial court's remark related to a matter which occurred over one thousand transcript pages later in the trial in the final argument. Likewise, the evidence was in the case, and no motion to withdraw or instruction withdrawing it was offered by the defendant when the case went to the jury. The plaintiff did not elaborate on the simple statement of the nonexistence of any right to compensation benefits as being the reason for the common law action. No error appears.

## II.

■ Defendant's second claim of error may be paraphrased as follows:

1. It was error to sustain an objection to defendant's proffered testimony that plaintiff was warned to stay from underneath the gutter, said testimony being an element of defendant's defense that its method of removing the gutter was non-negligent.

2. It was error to sustain plaintiff's objection to defendant's offer of proof that plaintiff had admitted he was aware of the possible danger the gutter might fall because plaintiff had put in issue plaintiff's inexperience and defendant's superior knowledge.

The position of defendant as to the exclusion of the evidence of warning is best understood by taking the exact language of defendant's argument:

"Defendant contends this evidence should have been received to show warnings given, and that defendant's method included express directions to plaintiff not to do the very act which caused his injury."

". . . here where plaintiff was in a position where he was distinctly told not to be, then to prevent defendant from showing this evidence, is making defendant an insuror [sic] against plaintiff's own negligence as opposed to merely placing upon defendant the burden of providing plaintiff a safe place to work."

Plaintiff counters by saying that such evidence is solely and simply another effort to inject contributory negligence or assumption of the risk as defensive elements in the case.

In support of its argument, defendant urges *Willis v. Skinner et al.*, 94 Kan. 621, 147 P. 60 (1915); *Uhlrig v. Shortt*, 194 Kan. 68, 397 P.2d 321 (1964); *Gilbert v. Hilliard*, 187 S.W. 594 (Mo.App.1916). The *Skinner* case is a very old Kansas case which holds that no negligence of the defendant was shown in directing plaintiff in his work. The discussion in that case of the act of the servant in exposing himself to danger after being warned by the master of the danger is not determinative as defendant implies from its citation of the case.

The Missouri case cited, *Gilbert v. Hilliard*, supra, is a case involving an instruction in a master-servant case which the court held defective as not submitting the actionable negligence of the master. In the original opinion, a majority of the court felt there was no evidence of the negligence of the master, and the cause was reversed without remand. On motion to modify the judgment, a majority of the court remanded the case on the ground of reversing its prior finding that the negligence of the master was shown by inference. It is not, as defendant suggests a case showing that the servant's voluntary act in exposing himself to danger constitutes a proximate cause of injury.

The *Uhlrig* case was considered in the prior appeal of this case and, as stated therein, is a case involving assumption of risk. As the concurring opinion points out in the previous appeal of this case, the rationale of the *Uhlrig* case and other cases cited in the prior appeal is assumption of risk.

At the time defendant offered the evidence of the warning, no issue remained in the case as to the defendant of either assumption of risk or contributory negligence. This was offered at the very close of defendant's evidence, and there had not been a shred of evidence that defendant had not rejected the Missouri Compensation Act nor accepted the Kansas Compensation Act.

In fact, defendant, in its brief filed here, claims that the matter never was in issue and that it had judicially admitted the rejection of the Missouri Act and the consequent denial of it of the defenses of contributory negligence and assumption of risk. On that basis, the testimony of the warning by the foreman was not admissible, it going only to the question of plaintiff's contributory negligence.

The Supreme Court in the prior appeal of this case pointed out that there was a jury issue on the defendant's negligence, and that is conceded here. The issue, thus, is not, as defendant poses it, a question of the plaintiff causing his own injury by disobedience. The injury received was at least in part due to the continuing negligence of the master in failing to provide a safe place to work. The Kansas cases cited by defendant on assumption of risk are predicated upon knowledge of the defendant and the plaintiff of a risk of the employment which may or may not be negligently caused, and in

those cases where there is negligence and equal knowledge, the doctrine of assumption of risk applies, but here where assumption of risk and contributory negligence are specifically barred by the Missouri statute, knowledge of the employee of any danger created by the employer's negligence is immaterial to any proper issue in the case. The theory, therefore, upon which defendant offered the testimony as to a warning of the danger of being under the work is immaterial to any proper issue submitted to the jury in this case. The trial court's ruling was correct.

On the exclusion of the evidence of the plaintiff's deposition testimony, the same reasoning must prevail. Clearly, the evidence went only to the plaintiff's knowledge of possible danger by crawling under the gutter which might fall. This is plainly contributory negligence evidence as the Supreme Court held in the prior appeal, l. c. 220:

> "Likewise, to be considered is plaintiff's statement that before he climbed down, he saw the top edge of the gutter had gaps broken out, was shattered, shaken loose with cracks through it; but he also said 'it looked like it was pretty solid.' It is also true that if plaintiff had climbed back on the scaffold to the west of where he was chipping he would not have been struck by the falling gutter. Defendant claims this was the sole cause of plaintiff's injuries. Our view is that if defendant had not rejected the Missouri Workmen's Compensation Act, this would have authorized submission of a defense of contributory negligence. However, its rejection of the Act barred this defense. It appears that some Kansas cases may designate as assumption of risk what we call contributory negligence. However, such assumption of risk is also barred as a defense to this defendant because it rejected the Missouri Workmen's Compensation Act. See *Moles v. Kansas City Stock Yards Co. of Maine*, Mo.App., 434 S.W.2d 752." (Emphasis supplied).

This entire line of argument on the exclusion of the evidence is simply casting in another form what was decided on the prior appeal.

### III.

Defendant urges error in the trial court's failure to order a remittitur "under the rule of uniformity," suggesting a remittitur here of $135,000 and leaving a verdict of $15,000.

Defendant relies on and extensively analyzes *Giambelluca v. Missouri Pacific Railroad Company*, 320 S.W.2d 457 (Mo.1959). Reference is made also to *Amos v. Southern Railway Company*, 273 S.W.2d 155 (Mo. 1974), cited in *Giambelluca*. No other cases are cited. Defendant's argument consists of analyzing the injuries received by Giambelluca, comparing them with those suffered by the plaintiff here and concluding that Giambelluca had more severe and extensive injuries and that the $75,000 award there reduced by remittitur $25,000 to $50,000 demonstrates that under the "rule of uniformity," the verdict here should be reduced $135,000 to $15,000. The last step in this reasoning is not very clear, but it is apparently based upon the judgment of counsel that Giambelluca's injuries were more extensive, aided by counsel's assumption that the ultimate award of $50,000 can be reduced to $35,000 for "injuries and disability" because there was proof of $15,000 in special damages.

The analysis of defendant which concedes differences in the injuries and situation of the parties between the cited case and the instant one demonstrates the fallacy inherent in defendant's claim that remittitur is required under the "rule of uniformity."

In the early development of the doctrine of remittitur, the fundamental determination that was made by the courts was a matter of simple uniformity as defendant here asserts. *Burdict v. Missouri Pac. Ry. Co.*, 123 Mo. 221, 27 S.W. 453 (1894) and *Devoy v. St. Louis Transit Co.*, 192 Mo. 197, 91 S.W. 140 (1905). The later and more persuasive cases upon the doctrine of remittitur developed a more sophisticated and rational test for determining the question of whether a remittitur would in fact be

ordered. Typical of that more recent line of cases is *Marczuk v. St. Louis Public Service Co.,* 355 Mo. 536, 196 S.W.2d 1000, 1007 (1946), in which the test was set forth in the following language:

> "Admittedly, there is no exact formula for gauging whether a verdict is excessive; each case depends upon its own facts. We may only consider the nature and extent of his injuries and losses, and diminished earning capacity, give some consideration to economic conditions and compare the award with the compensation awarded and permitted in cases of comparable injuries."

Clearly, by the time of the decision in *Marczuk,* the courts had adopted a test which included uniformity as *one* of the elements for determination of the propriety of a remittitur at the appellate level, but uniformity was not the *sole* determining factor. In addition to the factors set forth in the *Marczuk* language, supra, other cases have added as factors for consideration, the plaintiff's age, changing economic factors and a factor of deference to trial court and jury findings. Cases exemplifying the addition of these factors are *Hart v. City of Butler,* 393 S.W.2d 568 (Mo.1965); *Blond v. Overesch,* 527 S.W.2d 633 (Mo.App.1975), and *Turner v. Yellow Cab Company of Springfield,* 361 S.W.2d 149 (Mo.App.1962). Thus, what has emerged from the case law is a standard of reasonableness of the verdict to be determined by the appellate court taking into consideration all of the various factors that the courts have recognized as affecting the issue of reasonableness and utilizing as only one of those factors the notion of uniformity with comparable injuries.

■ It is also a part of the remittitur doctrine that in making the evaluation of the reasonableness of the verdict the appellate court looks to the evidence most favorable to the verdict and does not, as the defendant has obviously done in making the comparison in his brief, utilize the testimony which is unfavorable to the plaintiff's verdict in terms of injury proven. *Hart v.*

*City of Butler,* supra, and *Goslin v. Kurn,* 351 Mo. 395, 173 S.W.2d 79 (1943).

Thus, the reliance by the defendant upon *Giambelluca* is misplaced, both in the defendant's theory that only uniformity is to be considered and in the application of the case by the defendant's argumentative assertion of the most favorable medical evidence and proof with respect to the defendant's injuries.

■ Despite this failure of the defendant to properly approach the issue of remittitur to be decided here, the transcript has been reviewed and the factual elements of the plaintiff's injuries isolated, as well as the other inherent factors affecting those injuries such as the age of the plaintiff, his educational level and capability of doing work other than manual labor. Based upon that examination, the following appears to be a fair statement of the plaintiff's injury and damage.

Plaintiff suffered fractures of the transverse processes on the left side of the second, third, fourth and fifth vertebrae and fractures of the twelfth left rib, sacrum, right acetabulum, right innominate bone and the mid shift of the fifth metatarsal in the left foot. Several of the fractured transverse processes were displaced. In addition to these nine fractures, there was displacement of the left sacroiliac articulation and the pubis symphysis. Plaintiff also sustained numerous pulled and torn muscles and ligaments.

As a result of these "serious" and "massive" injuries, as defendant's own doctor described them, plaintiff was immediately hospitalized and remained hospitalized for five weeks. He was placed in a sling that ran under his pelvis, suspending him from an overhead bar, in an attempt to push together the separated joints. The fractured foot bone was wired to hold it in place for healing. Plaintiff took heavy doses of pain medication all during this hospitalization and continued to take pain medication after going home.

Plaintiff was released from the hospital with an unstable pelvis. It did not heal correctly, and six months later he was hos-

pitalized for an operation to fuse the improperly healed sacroiliac. He was placed in a cast from his armpits to his ankles and released after 24 days. Soon thereafter he was hospitalized for 38 days when he developed rectal sores which were too difficult to treat at home. He was in the body cast fourteen weeks.

The long range effects of the injuries included a shrinking of the left leg by three fourths to one inch, probable development of post traumatic arthritis because of damage to cartilage around the left hip joint and pain and suffering in the areas of his injuries.

Plaintiff used crutches after the first hospitalization and there was pain in his lower back, hips and left foot. Because of the pain involved, he could not lift a baby from the floor.

After the third hospitalization, he was on crutches five or six months. Then he used a cane for one to one and one half years. After that he often used a fence or wall for support.

At the time of trial, plaintiff continued to experience pain at the location of his injuries when the weather was damp or cold. He experiences pain when he sits or stands on his feet in one position too long. It is painful for him to bend down or back, squat or drop to one knee, sit with legs extended or reach his arms high. He can dress himself, but with difficulty. He continues to wear a back brace, even when he sleeps. When lying down, he experiences pain if he turns on his left side and since the time of the first hospitalization he has not experienced a complete night's sleep. He takes aspirin regularly. His family administers massages and heat treatments.

He cannot pursue activities he once enjoyed such as games with his children that require physical activity. He cannot shoot pool because of the pain. He has given up hunting because it is too strenuous for him, and he is limited in fishing because he cannot stand upright to fish. He was earning some income by driving a bus at the time of trial, but that job induced pain because of the vibrations of the moving bus.

Plaintiff walks with a moderate left leg limp. The condition is likely to be permanent unless plaintiff stretches his leg muscles, but the required therapy would be painful. He is tender in the area where there are surgical scars. Internal scar tissue, formed after the tearing of muscles in the accident, is a source of pain.

Plaintiff's doctor advised him to avoid work requiring standing, walking, climbing, back bending, or lifting. He is incapable of heavy work. An employment counselor testified that if plaintiff's condition is as herein described, there is little chance of plaintiff could work as a laborer or in a semi-skilled labor capacity. For example, plaintiff could not function as a janitor or bus boy. Yet because of plaintiff's lack of education, he was qualified only for laborer or semi-skilled positions.

Considering the serious fractures, the large amount of soft tissue injury and injury to the pelvic girdle involved in this plaintiff's injuries, his subsequent disability in terms of his ability to walk and to work, his testimony concerning his continuing pain upon the motion of his legs and in doing the only type of work for which he is fitted, the injuries would clearly sustain a larger award than was given and affirmed in *Bedwell v. Chicago, Milwaukee, St. Paul & Pac. R. R. Co.,* 509 S.W.2d 81 (Mo.1974), where a $94,000 judgment was held not excessive upon injuries much less extensive than the present plaintiff's injuries. That case, recognizing as it does the presently eroded purchasing power of the dollar, more nearly fits the level of verdicts necessary at this time to properly compensate plaintiffs for the injury and damage sustained by such injuries.

In this case, one jury in the first trial gave the plaintiff a verdict of $125,000. The question of remittitur was not considered by the appellate court in that case, but clearly, the trial court entered no remittitur. Here, the question of remittitur was raised, briefed and argued to the able trial judge after the jury verdict. That he carefully considered and weighed the size of the

verdict based upon his advantage of having seen the plaintiff and having heard his testimony and that of the expert medical witnesses is evidenced by a portion of his opinion filed in this case which is as follows:

"In no case is it possible to determine with absolute accuracy the maximum verdict amount which can be supported by the evidence. Each case must be reviewed on its own facts . . .. In the present case, plaintiff suffered fractures of four lumbar vertebrae, the sacrum, the right acetabulum, a separation of the symphysis pubis, other fractures and numerous injuries to internal organs and bodily muscle structures. He was hospitalized for a total time of more than eight weeks and, according to plaintiff's evidence, he was totally and permanently disabled from performing manual labor, the only occupation available to him considering the level of his ability, education and experience. It cannot be held on this factual situation that the verdict of $150,-000.00 represents any bias and prejudice on the part of the jury or that the amount is manifestly unjustified. The court expressly finds on this record and having due regard to the opportunity afforded the court to hear the testimony that the verdict of $150,000.00 is not excessive."

Such careful consideration by the trial court brings still another factor into focus in the determination here to be made of the excessiveness of the verdict claimed by the defendant. When the appellate court has before it a verdict which the trial court has reduced by a remittitur, the appellate courts review on the basis of an exercise of discretion by the trial court. This is because the order of remittitur by the trial court constitutes a ruling upon the weight of the evidence (*Morris v. Israel Brothers, Inc.,* 510 S.W.2d 437, 447 (Mo.1974)), and it is only where there is an abuse of discretion in *failing* to order a remittitur or in the amount of remittitur ordered that a judgment is reviewable by the appellate court. *Dodd v. Missouri-Kansas-Texas R. Co.,* 354 Mo. 1205, 193 S.W.2d 905 (1946); *Williamson v. Wabash Railroad Co.,* 355 Mo. 248,

196 S.W.2d 129 (1946). The rule is stated in *Couch v. St. Louis Public Service Co.,* 173 S.W.2d 617, 626 (Mo.App.1943), in the following language: "when the trial court . . . *actually considers* the matter of the excessiveness of the verdict and, by ordering remittitur, gives *an affirmative expression of his own considered* view . . . the appellate court . . . regards it as so strongly persuasive that except in a case which calls unmistakably for a greater reduction, the judgment *left to stand* by the trial court will not be disturbed on the appeal." (Emphasis added) In *Morris,* the court held that the same deference to the action of the trial court is to be accorded in a case where the plaintiff appealed urging restoration of a cut in the verdict. There is no reason in logic or law that the same deference should not be a factor in the consideration of a defendant's request for remittitur when the trial court has affirmatively acted to sustain a jury verdict. As evidenced by the written opinion in this case, the trial judge carefully considered the question and upon his weighing of the evidence found no remittitur necessary. In viewing the injuries in this case, comparable awards of current date and all of the factors to be considered under the appropriate test for directing remittitur, as well as the fact that two juries have awarded this plaintiff a substantial verdict and the clear indication present in this case that the trial court weighed the evidence and found no remittitur should be ordered, there is no basis for affording the defendant relief by way of remittitur.

## IV.

By separate and again very prolix points, the defendant alleges error in three separate areas of the argument. Defendant claims error, first, in plaintiff suggesting to the jury lump sum amounts for pain and suffering; second, in the trial court's refusing to order a mistrial after the defendant's objection was sustained to an argument verging on a computation by the hour of plaintiff's pain and suffering; and third, error on the part of the trial court in direct-

ing the defendant not to argue any further on what the defendant characterizes as the issue of remote cause, thereby depriving the defendant of the opportunity of arguing the issue of proximate cause.

Turning to these points in order, some background of the argument must be set forth as to each. With respect to the issue of lump sum arguments for pain and suffering, the plaintiff had made an argument on wage loss at $2.61 an hour. Following that, the record shows the following:

"Now then, pain and suffering. You are entitled to something for pain and suffering, are you not? You know what he went through in this first hospital, hospital Number 1, he was in there 36 days. It's your discretion but I say—

MR. O'NEAL: Objection, Your Honor. There is no evidence to support a computation and I feel like it's wholly irrelevant.

MR. KODAS: From May 28th to July—

MR. O'NEAL: I would like a ruling on my objection, Your Honor.

THE COURT: Come forward.

(WHEREUPON, the following proceedings were had and entered of record in the presence BUT OUT OF THE HEARING OF THE JURY:)

MR. KODAS: I trust the Court will observe my time.

THE COURT: I will. I don't understand the objection. A computation of what?

MR. O'NEAL: He's going to compute pain and suffering. It's obviously—there is no computation you can make on pain and suffering.

MR. KODAS: Pain and suffering, that's what I am computing.

MR. O'NEAL: Of course, there is no evidence involving any such computation and I don't feel that plaintiff is entitled to make any such computation. This is a matter solely for the jury. That's the basis.

THE COURT: The objection is overruled.

(WHEREUPON, the following proceedings were had and entered of record IN THE PRESENCE AND HEARING OF THE JURY:)

MR. KODAS: Okay. Hospital No. 2, here's where we have the surgery. This is when they cut the back open, 22 days he's in there that time. I say, allow the man $2200. for what he lay there and thought of and feared and underwent. And the continual narcotics that were prescribed in all three of those hospital records. Hospital No. 3—

MR. O'NEAL: Just a moment, I object again, Your Honor.

(WHEREUPON, the following proceedings were had and entered of record in the presence BUT OUT OF THE HEARING OF THE JURY:)

MR. O'NEAL: If the Court please, he said to allow the man the 22 days and then he wrote on the chart for the jury in his computation, the sum of $2,200, so he's obviously allowing one hundred dollars a day for pain and suffering. There is no evidence of any such thing, that's wholly improper computation for the jury, invades the province of the jury and we most strenuously object to it. It's very prejudicial to the defendant.

MR. KODAS: To resolve the matter I will make round numbers of everything.

MR. O'NEAL: Oh, no, that doesn't solve the situation.

THE COURT: Well, I don't understand, Mr. O'Neal, what your objection is?

MR. O'NEAL: He is computing pain and suffering by a formula of one hundred dollars a day. There is no evidence to substantiate that pain and suffering is to be compensated to plaintiff at one hundred dollars a day. This is a question for the jury, strictly invading the province of the jury, is prejudicial to this defendant.

MR. KODAS: These computations are your deductions. I don't know what a jury might deduct.

MR. O'NEAL: Well, when he says "We will allow him the 22 days and writes $2,200 on the pad he's writing on in front

of the jury, it's clear that he's allowing one hundred dollars a day for pain and suffering. It's just improper to make computations of this kind, Judge.

MR. KODAS: I have stated on the record, if I can ever get back to it I will make round numbers out of it so that you won't worry about it at all then.

MR. O'NEAL: I assume that it's going to be marked as an exhibit in the case, Your Honor.

MR. KODAS: Certainly.

MR. O'NEAL: And preserved. Do I have a ruling?

THE COURT: The objection is overruled.

(WHEREUPON, the following proceedings were had and entered of record IN THE PRESENCE AND HEARING OF THE JURY:)"

Defendant relies on *Faught v. Washam,* 329 S.W.2d 588 (Mo.1959); *McCormick v. Smith,* 459 S.W.2d 272 (Mo.1970); and *Chambers v. City of Kansas City,* 446 S.W.2d 833 (Mo. 1969), contending that these cases condemn the argument made by the plaintiff in this case. Defendant in his argument has combined the objection he later made concerning the hourly rate with the argument set forth above, but they are properly and logically separable in the argument and should be considered separately.

There can be no doubt that *Faught* condemned any mathematical formula for the computation of sums to be allowed for pain and suffering and in dictum both *Chambers* and *McCormick,* supra, support *Faught* at least inferentially. *Chambers* was closer to a case involving a formula than was *McCormick.* In *McCormick,* the plaintiff argued for $3,000 for pain and suffering for sixty days and $1,000 for a 64-day period, whereas, in *Chambers,* every sum argued was the result of a formula either by the day or per treatment to the plaintiff. *Faught* recognized, however, l. c. 602, 603, that mere argumentative suggestion of a lump sum does not constitute reversible error. The real question to be decided is whether the argument of the plaintiff setting forth differing lump sums

for different periods of time of hospitalization constitutes a direction to the jury to utilize a formula for the determination of pain and suffering. Examining the arguments in this case of $4,000 for 36 days of hospitalization, $2,500 for 22 days of hospitalization, and $1,500 for a third period of hospitalization covering 37 days, it cannot be said they suggest a formula. The case is more like *McCormick* than like *Chambers,* and the issue of the use of a lump sum for specific periods of hospitalization was not there ruled or decided. Clearly, the sums mentioned by the plaintiff in this case were different for the different periods of hospitalization, apparently based on the differing intensity of care during the periods of hospitalization. The posture in which plaintiff offered the figures is such that he did not refer to any per day or per hour amount but simply suggested a lump sum for the specific periods, all of which differ. But there is an even stronger reason why this is not reversible error in the present case. None of the objectionable factors found in *Faught,* supra, appear, and although the defendant has coupled the claim of error with a claim of excessiveness as *Chambers* and *McCormick* both suggest is necessary, the trial court has clearly ruled that in considering the effect of the argument in the light of the claim of excessiveness, the argument did not affect the size of the verdict, nor cause it to be excessive. The trial court pointed out that even if the argument were assumed to be improper, the argument of the amounts of $4,000, $2,500 and $1,500 for a total of $8,000 in lump sums argued by plaintiff as pain and suffering for hospital stays when compared with the verdict of $150,000 does not demonstrate that the jury relied upon such argument to arrive at their verdict. Indeed, it is clear from the exhibit which shows all of the figures argued by the plaintiff that the argument for $180,000 for pain and suffering after the hospitalization to the date of trial, and the argument for $105,000 for pain and suffering for the balance of his life might have had far greater influence upon the jury in determining the amount of their verdict. The defendant did not object

in any fashion to those figures, nor did the defendant raise the question of the plaintiff's use of the chart to gather all of these figures. The entire amount requested by the plaintiff of $347,000 was not accepted by the jury. The verdict was for less than half of that amount. The defendant has not shown that the discretion of the trial court was abused in ruling upon the lack of prejudicial effect of improper argument as the trial court plainly did on the after-trial motion. *S. G. Payne & Company v. Nowak*, 465 S.W.2d 17 (Mo.App.1971); *Hawkins v. Allen Cab Company*, 457 S.W.2d 940 (Mo. App.1970).

■ Defendant also claims error in the court's failure to order a mistrial after sustaining the defendant's objection to another portion of the plaintiff's argument. After the argument as to the hospital stays, plaintiff's counsel began an argument which seems clearly to have been leading toward a computation of the pain and suffering of the plaintiff by an hourly rate, although he never gave an hourly rate, nor made the job offer type argument condemned in *Faught*, supra, but was interrupted by an objection which was sustained by the court. The court overruled the request for the mistrial but instructed plaintiff's counsel outside of the record to avoid arguing any formula basis for pain and suffering. After that ruling, plaintiff returned to the argument on pain and suffering and gave the lump sum figures above referred to (of $180,000 and $105,000) without objection by the defendant, and negated the notion of any direct formula for computing such sums by pointing out to the jury that pain and suffering did not occur during sleeping hours and that on some days it was less than upon others, and frankly admitted that the plaintiff had "gotten better" and that the lesser figure for the latter period reflected that fact. This denial of the mistrial by the trial court is, of course, again a matter of the trial court's exercise of discretion. In the light of the prompt action of the trial court and the plaintiff's complete obedience to the trial court's direction to the extent of suggesting to the jury quite appropriately that pain and suffering is a variable matter

not subject to calculation, the ruling cannot be held to be an abuse of discretion. *Furlow v. Laclede Cab Company*, 502 S.W.2d 373 (Mo.App.1973).

■ The third area of argument error is defendant's claim that it was improperly limited in its argument. The exchange with respect to this argument occupies several pages in the transcript, but the flavor of the issue may be reached by paraphrase. Defendant had argued extensively on the issues of primary cause, the reasonably safe method prescribed by the defendant for doing the work, the conflict in method between that prescribed by the defendant and the plaintiff's expert and clearly had argued specifically that the jury must find that the defendant's method of doing the work was the direct cause of the plaintiff's injury and was the substantial factor causing the injury. Defendant then shifted its argument and, after fully arguing the issues of direct causation and the method of work, premised the next feature of its argument with a specific description of the plaintiff's activities immediately before his injury, emphasizing the fact that the plaintiff was entering upon the scaffold at a point under the trough and was in fact lying upon the inside edge of the scaffold when the gutter came down. Then the defendant said in the argument, "Now where in the world was Tribble's method of taking this gutter down the direct cause of plaintiff's injuries?" Plaintiff's counsel thereupon objected, contending that by coupling the method of work and the actions of the plaintiff, the defendant was injecting the issue of contributory negligence or assumption of risk. After a long colloquy in which defendant's counsel vehemently argued his right to argue the issue, the court overruled the objection and cautioned defendant's counsel not to impinge upon the area of contributory negligence. The defendant immediately upon returning to the argument said, "We, submit to you, gentlemen, that Clarence Tribble's method could be no more than a remote cause of the plaintiff's injuries in this case." The court, after some considerable colloquy, indicated

he was again going to overrule the objection, but cautioned defendant's counsel to discontinue a line of argument of this nature. There was some further colloquy in which defendant's counsel claimed not to understand the ruling, and the court offered to sustain the objection and instruct the jury if he did not abstain from the argument, and counsel said, "I will not pursue it further." The court then said, "Well, make up your mind," and counsel asserted, "Well, you sustained the objection." After some further colloquy, the court, understandably piqued by the continuing wrangle over the argument, sustained the objection and instructed the jury to disregard the last comments.

Defendant cites cases involving improper oral instructions by the judge or prohibition of an argument clearly proper and contends that the trial court's ruling in effect made the defendant an insurer of defendant's safety. From a consideration of the entire argument on the issue of liability, it is clear that defendant was permitted to argue the only issue available to him in the defense of this case, the existence or nonexistence of negligence of the employer. The issue of such liability is succinctly put in *Moles v. Kansas City Stock Yards Co. of Maine*, 434 S.W.2d 752, 755 (Mo.App.1968), "The ultimate effect of this statute [RSMo 287.-080(1)] is to make negligence of the employer, or the absence thereof, the sole and only issue to be determined insofar as liability is concerned."

Defendant seizes upon language in the earlier opinion indicating that the plaintiff's performance of the work was to be considered in determining the question of negligence. A fair reading of that language and the entire opinion can lead only to the conclusion that the court was considering the manner in which the plaintiff was to perform the work in relationship to the placement of the scaffold upon which the plaintiff worked. Following that comment, the court clearly stated that the plaintiff had made a submissible case of the defendant's negligence in providing a safe place to work. The court in the earlier appeal certainly did not mean to imply that the plaintiff's conduct could be argued as an intervening or other cause of his injury, as defendant sought to argue. No matter what semantic device is utilized, remote cause, sole cause, or proximate cause, the plaintiff's conduct contributing to the injury cannot be injected into this case to defeat his recovery. This is so for the simple reason that the negligence charged against this defendant and admittedly proven as a submissible case is a question of continuing negligence, and the lack of safety of the place to work was not terminated and could not have been terminated so long as the work progressed. Therefore, any conduct which combined with or contributed to the plaintiff's injury could at most be a concurrent or combining cause of the injury and not an intervening or remote cause. Defendant's contention as to trial court error in denying him the right to argue evidence of plaintiff's conduct in *relation* to the method of work is simply a sophisticated, but nonetheless, improper argument of contributory negligence. In the exercise of his discretion, the trial court did not err in sustaining the objection and directing the jury to disregard the improper argument.

V.

Defendant finally contends that the giving of instruction 3 was reversible error because it failed to submit five issues of ultimate fact, assumed a fact not in evidence, and failed to hypothesize correctly the defendant's method of work. The instruction given is as follows:

"Instruction No. 3: Your verdict must be for plaintiff if you believe: First, defendant employed a method of work requiring plaintiff to use a scaffold where plaintiff would be below the gutter to be removed, and Second, defendant knew or by using ordinary care should have known that the method of work described in paragraph First did not provide plaintiff a reasonably safe place to work, and Third, defendant was thereby negligent, and Fourth, as a direct result of such negligence, plaintiff was injured. (MAI 22.01 Modified-Given)"

Upon the first issue of the omission of essential elements, the defendant argues (a) that the unsafe condition should have been specified as being at a specific location at the place of work and creating a danger not ordinarily inherent in the employment, (b) that the plaintiff had no knowledge or could not have known and that the defendant knew or by exercising ordinary care could have known of the condition, (c) that the defendant failed to remove the unsafe element or warn of it, and (d) that as a direct result the plaintiff was injured. When these assumed elements are considered, it is clear that the defendant is arguing that the plaintiff should have submitted upon a theory of warning and attempting to argue for error in the instruction given by asserting that the instruction was upon a different theory. Defendant relies on *Uhlrig v. Shortt*, supra; *Gibson v. Freygang*, 112 Mo.App. 594, 87 S.W. 3 (1905), and *Piepmeyer v. Johnson*, 452 S.W.2d 97 (Mo. banc 1970).

These cases are factually similar to the instant case but they are not controlling because they were submitted on a different theory. They were common law actions by a servant against a master in which assumption of risk was an available defense which the servant could avoid by proving the master had superior knowledge of the risk and the servant had none, and that the risk was not open and obvious. When assumption of risk is in the case, a plaintiff must instruct on those issues. In the case at bar, the defense of assumption of risk was denied defendant by statute. Since the instruction was here responsive to a theory that eliminated the defense of assumption of risk, it properly eliminated from the jury's consideration the theory of warning. The theory of the instruction actually given was a simple one and clearly a proper one under the law of the case as announced in the prior decision of this case in the Supreme Court.

Two issues were raised in the prior appeal with respect to the instruction. First, that the use of the language, "Such negligence directly in whole or in part in injury to plaintiff" was error because such instruction was only proper in a FELA case. That issue is no longer in this case, the present instruction clearly avoiding that error. The second issue raised was that the instruction was too broad and indefinite in submitting only a failure to provide a reasonably safe condition of work and not submitting any condition specifically. The court in discussing this claim of error said that the plaintiff's main claim was that the method of work was unsafe because the men stood on the scaffold below the gutter and caused pieces of gutter to fall around where they stood. The court, indicating what could properly have been submitted, said as follows: "Plaintiff's verdict directing instruction could have submitted, in accordance with this theory, a finding that the place or conditions of work were unsafe because or on account of having the men work on a scaffold where they would be standing below the gutter they were required to remove." (l. c. 222) The instruction here is precisely that. It submits a method of work requiring plaintiff to use a scaffold where plaintiff would be below the gutter to be removed. It requires further that the defendant knew or should have known that the method did not provide plaintiff a reasonably safe place to work, and that the defendant was thereby negligent and that as a direct result of that negligence, the plaintiff was injured. The additional findings urged by defendant here would plainly have changed plaintiff's theory of his case which the defendant has no right to do. The plaintiff submitted in the instant case upon the theory presented in the prior case and followed the direction of the Supreme Court in instructing on that theory.

The evidentiary fact which defendant claims is assumed by the instruction and is not in evidence is that the scaffold was below the gutter. The demonstrative evidence in this case, all of the testimony and everything in the prior opinion indicates that the scaffold was below the gutter. The argument is completely specious. The pictures demonstrate that in view of what actually occurred, no matter where the

plaintiff had been standing on the scaffold performing his duties of chipping, he could likely have been struck by the gutter fragments falling upon him. The photographs clearly indicate that the concrete that fell covered the entire width of the walkway and whoever chanced to be on the walkway when it fell would have been struck.

The last complaint made by the defendant is that the instruction failed to properly hypothesize the method of work. Cited for this proposition is again the early appeal of this case and especially the language, l. c. 220, "[o]f course, the method of work directed, requiring chipping from the ends of the gutter, must be taken into consideration on the issue of negligence." Defendant insists this language required that the entire method be hypothesized. Immediately preceding the quoted portion relied on by the defendant, the court pointed out that plaintiff's claim of negligence was not based on design or construction, but on the *use* of a scaffold *in the position it was placed* requiring the men to do the work of removing the gutter standing where the pieces of gutter would fall around them on the scaffold with the risk that a larger section than intended would fall as it did. Clearly, the negligence consisted not of requiring the plaintiff to chip from the ends of the gutter but *in providing a place for him to stand while chipping which exposed him to the risk which is exactly the issue submitted in instruction 3.* There is no error in the instruction. The judgment is affirmed.

All concur.